Borough of Brookhaven and William Wetten, Appellants *v.* Albert D. Park, III, Appellee.

Argued October 3, 1979, before Judges ROGERS, DiSALLE and CRAIG, sitting as a panel of three.

James P. Gannon, with him Beagan, Gannon and Barnard, for appellants.

Vincent B. Mancini, with him Kassab, Cherry, Curran and Archbold, for appellee.

OPINION BY JUDGE ROGERS, November 8, 1979:

On March 9, 1976 Albert D. Park, III, by an agent, submitted building plans for an addition to his commercial building located in the Borough of Brookhaven to the borough building inspector. It is agreed that the proposed addition conformed to the then zoning regulations. A few weeks later the plans got back into Park's hands for the supply of more construction details. On April 19, 1976 the Borough of Brookhaven caused due public notice of a new proposed comprehensive zoning ordinance to be given by advertisement in local newspapers. Park's proposal did not conform to the new regulations. On August 16, 1976 Park resubmitted his plans for the addition with details. On May 2, 1977 Borough Council rejected Park's plans. On May 9, 1977 the new comprehensive zoning ordinance of the Borough of Brookhaven was adopted.

The present litigation was begun with Park's complaint in mandamus in which he sought an order re-

quiring the issuance of the building permit for his addition. Park alleged that he had applied for a permit in March 1976. The Borough of Brookhaven answered that Park made no application for a permit in March 1976 and that when he did apply in August 1976 the Borough then had pending its new comprehensive zoning ordinance, later adopted, which did not allow the proposed addition. After evidence was adduced Park filed a motion for summary judgment which the Court of Common Pleas granted, concluding that Park had indeed applied for a permit on March 9, 1976, a date before that on which the Borough first gave public notice of its proposal to adopt a new comprehensive zoning ordinance.

The Borough contended below, and still contends, that Park made no application on March 9, 1976. It is true that Park did not execute a formal application. However, on that date an agent for Park submitted plans with a letter explaining what was intended, concerning which the building inspector agreed in his deposition "that on March 9 [1976] Mr. Park made application to extend his building and to start to seek approval for a building permit." It is true that the plans first submitted found themselves back in Park's hands. This circumstance is, however, described by the building inspector as follows:

Q. You said on March 9th, 1976, you received the plans and you thereafter, I would assume, within days or a week or something communicated with Mr. Park.

A. Correct.

Q. At that time, what was the purpose of your communication?

A. Well, actually, I think what happened was Mr. Park called me.

Q. I understand.

A. And that is—

Q.  Did he call you to find out when his permit was going to be issued?

A.  I think mainly the phone call was to find out where we stand as far as the review of the plans go.

Q.  So that he can get his permit?

A.  Right.

Q.  That was about two weeks after March the 9th of 1976?

A.  Right.

Q.  Would it be fair to say then that you then told him there were certain other things that had to be done before you can give approval for the permit, I mean when you had your oral conversation with him?

A.  That would be a general statement.

. . . .

Q.  Thereafter, when was the next time that you communicated with Mr. Park?

A.  I would venture to say that a short time previous to 8-16-76 another set of plans was submitted and those plans did have a review.

Q.  Those plans that had been submitted, they were for the same purpose as the previous plans submitted?

A.  Right.

Q.  That is for an addition to the premises of 3221 Edgmont Avenue?

A.  Correct.

Q.  Did the second set of plans have more detail than the first set of plans specifically?

A.  Yes.

Q.  Essentially, the first set of plans, they showed what they intended to build and where they intended to build; is that correct?

A.  Say that again?

Q. The first set of plans that were supplied on March the 9th of 1976, that you do not have in the file, those plans did reveal or did reflect that an addition was to have been built and where it was to have been built on the property; is that correct?

A. Right.

Q. All the second set of plans did was really amplify or in detail show the structural changes and the more detailed changes in the building; isn't that correct?

A. Yes.

Q. When you received the second set of plans, this was an amplification of the first set of plans that was originally sent; isn't that so?

A. Yes.

Q. So that it was a continuing request by Mr. Park for a building permit that he had made back on March the 9th of 1976; is that correct?

. . . .

THE WITNESS: I'd say yes.

This testimony amply supports the finding of the court below that Park indeed made application on March 9, 1976. Although the Borough of Brookhaven does not here argue that the application was withdrawn or abandoned, the same evidence clearly demonstrates that the building inspector, the person in the best position to know, did not believe that this was the case.

While the considerations just given support the court's judgment, we are constrained to say that we also agree with Park's further contention that the Borough of Brookhaven did not proceed with the adoption of its new comprehensive plan with that diligence which is required of municipalities seeking to have advantage of the pending ordinance rule. Its proposal

228

of a new ordinance was advertised April 19, 1976 and the ordinance not adopted until May 9, 1977. Even if Park's submission of August 16, 1976 were considered his first application, the borough's denial in May 1977 on the grounds of an ordinance pending since April 19, 1976 and not finally adopted until May 9, 1977, would be of doubtful validity. A leading case on the subject, *Boron Oil Co. v. Kimple,* 445 Pa. 327, 333, 284 A.2d 744, 748 (1971), closes with the following sentence:

In sum, a building permit may be properly refused in situations such as the one at bar *only* when the municipality acts initially in good faith to achieve permissible ends and thereafter proceeds with reasonable dispatch in considering the proposed rezoning. (Emphasis in original.)

Order affirmed.

ORDER

AND Now, this 8th day of November, 1979, the order of the Court of Common Pleas of Delaware County is affirmed.