536 A.2d 836

The Board of Supervisors of Greene Township, Appellant *v.* Walter Kuhl, Appellee.

Argued October 9, 1987, before Judges BARRY and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*William T. Jorden, Jorden and White,* for appellant.

*Randy L. Shapira, Plate, Shapira, Hutzelman, Berlin, May, Walsh and Brabender,* for appellee.

OPINION BY JUDGE PALLADINO, January 21, 1988:

The Board of Supervisors of Greene Township (Supervisors) appeal a decision of the Court of Common Pleas of Erie County directing them to grant Walter Kuhl's (Kuhl) conditional use application for a landfill to be used for solid waste disposal. We affirm.

To understand and properly decide this case, it is necessary to describe at length the events of this landfill lament which occurred prior to and after the conditional use application at issue.

In 1976, Greene Township enacted a comprehensive zoning ordinance (1976 Ordinance). The 1976 Ordinance established an I-1 (industrial parks) district, which allowed solid waste disposal as a conditional use[1] if the general provisions for a conditional use in article XVI of the 1976 Ordinance were met and:

1. Providing the rules and regulations of the Commonwealth of Pennsylvania and the Department of Environmental Resources [DER] have been met.

2. Providing all ordinances of the township have been complied with as regards the streets

---

[1] No solid waste facilities were ever approved by the Supervisors under the 1976 Ordinance. *See* Stipulation of Fact No. 90.

and highways to and from the solid waste operation and any ordinances regarding the construction and operation of a solid waste disposal.

3. Providing any such operation does not provide a nuisance to the health, safety, and welfare of the community.

Art. IX, §903.B. Solid waste disposal was defined in the 1976 Ordinance as "[a]ny facility, land or other, used for the purpose of disposing of solid wastes of an industrial, commercial or domestic nature." Art. III, §301.100.

Kuhl made his first application to the Supervisors for a conditional use under the 1976 Ordinance to construct and operate a solid waste landfill on his Route 8 property[2] in April, 1981. This application was denied in June, 1981 because Kuhl was not the title owner of the property and had not submitted the requisite maps, plans and text, both required by article XVI, §1601.A of the 1976 Ordinance, and because he did not show he had met all the rules and requirements of DER. In June, 1981, the Supervisors also voted "to take action to Amend Zoning Ordinance so that they may find a suitable area in the Township for 'landfills.' " Record item K. In July, 1981, Kuhl filed his second application for a conditional use to establish a landfill. The Supervisors denied this application in August, 1981 on the basis that Kuhl had still not obtained the appropriate landfill permit from DER.

The Supervisors published their first proposed amendment to the 1976 Ordinance on July 30, 1981. This amendment would have established an I-2 (heavy industrial) district and would have moved the conditional use for a solid waste facility to this district. The land proposed to be zoned I-2 was composed of two separate

---

[2] Kuhl and Greene Township have been involved in litigation over Kuhl's use of other property in the Township as landfills for a number of years.

areas presently zoned A-1 (agricultural). After a public hearing on August 21, 1981, the Supervisors published a notice on September 8, 1981, stating that they were satisfied with the language of the amendment but were appointing a site selection committee to determine where the I-2 district should be located. The committee presented its report to the Supervisors at their October 13, 1981 meeting. The committee recommended not only the area it felt appropriate for an I-2 district,[3] but also suggested changes in the language of the proposed amendment. Record item V. At the same meeting, the Supervisors directed their solicitor to draft a solid waste ordinance. A public hearing on the proposed solid waste ordinance was held February 9, 1982; the ordinance (1982 Solid Waste Ordinance) was adopted by the Supervisors at a meeting convened immediately after.

In March, 1982, the Supervisors hired a professional planner to work with the site selection committee to find an appropriate area for the I-2 district. After a number of meetings and public hearings, a site was chosen adjacent to the current I-1 district[4] and a public hearing again held to consider the proposed amendment to the 1976 ordinance and the new proposed site. Subsequently, at their January 10, 1984 meeting, the Supervisors passed a resolution *removing* solid waste landfills from the conditional uses in the proposed I-2 district and directed the Greene Township Planning Com-

---

[3] The Supervisors submitted this site to the Erie County Department of Planning for review. On November 15, 1981, the Department notified the Supervisors that the recommendation would be to deny a zoning change from agricultural to heavy industrial for this site. Record item Y.

[4] The Erie County Department of Planning reviewed and gave a recommendation of approval to this site. Record item 01. The zoning change would be from residential and business to heavy industrial. Record item M1.

mission and the site selection committee "to create a new district designed for the location of landfill uses." Record item R1. Nine sites were recommended to the Supervisors, two being the current I-1 district and the proposed I-2 district. A public hearing was held on July 25, 1984 at which the amendment to the 1976 Ordinance proposed on August 21, 1981, with the addition of an L-1 (landfill) district and seven of the nine proposed landfill district sites, was considered.[5]

On October 1, 1984, Kuhl filed his *third* application for a conditional use under the 1976 Ordinance to establish a solid waste landfill on his Route 8 property. A hearing on the application was held on December 18, 1984. On January 11, 1985, the Supervisors issued their opinion denying Kuhl's application. The Supervisors made the following statement: "It thus appears that the conditions which Mr. Kuhl was unable to meet on his prior request for conditional use approval have now been satisfied." Record item H2. However, they denied the application on the basis of the "pending ordinance doctrine," concluding:

[A] comprehensive planning process with respect to proposed amendments to the Greene Township Zoning Ordinance to designate other areas of the township for landfill uses was underway before this particular request was filed with the Township, and public hearings on specific proposed amendments were being advertised in accordance with law at the very time that Mr. Kuhl's conditional use application for this property was filed.

---

[5] The Erie County Department of Planning reviewed these seven sites. The Department recommended approval of only 1 site in its entirety, recommended denial of 1 site completely and recommended further study of the feasibility of portions of the other 5 sites. Record item X1.

*Id.* Kuhl appealed this decision to the trial court on February 7, 1985.

After Kuhl filed his third conditional use application, but prior to the Supervisors' decision, the Supervisors chose one of the seven proposed sites[6] and held another public hearing. Subsequent to this hearing and to the Supervisors' decision on Kuhl's application, the Supervisors, on February 12, 1985, adopted a resolution which *changed* the proposed amendment to the 1976 Ordinance. One significant change was that any landfills must be municipality owned and operated. The resolution also changed the site of the proposed L-1 district and indicated that changes would be made in the 1982 Solid Waste Ordinance. On March 19, 1985, a public hearing was held on the proposed amendments and additions to 1976 Ordinance, the proposed amendment to the 1982 Solid Waste Ordinance, and a new ordinance dealing with mineral extraction.[7] This hearing was continued until May 31, 1985.

After the May 31, 1985 public hearing, the Supervisors made changes in the proposed amendment and additions to the 1976 Ordinance and the proposed amendment to the 1982 Solid Waste Ordinance. A public hearing on these changes was held September 25, 1985. At a meeting convened immediately following the public hearing, the Supervisors adopted the draft of the proposed amendments and additions to the 1976 Ordinance (1985 Ordinance), the amendment to the 1982 Solid Waste Ordinance presented at the hearing (1985

---

[6] Erie County Planning Commission informed the Supervisors that the site chosen, the Turner Road site, was unacceptable as a landfill site because it was in a flood plain and state law would not permit a landfill in such a site. Record item B2.

[7] The Erie County Department of Planning reviewed all of these and basically recommended approval. Record items P2, Q2 and U2.

Solid Waste Ordinance), and the mineral extraction ordinance.

The final version contained no I-2 or L-1 district. The old I-1 district, article IX, was repealed and a new I-1 district, article X, adopted. The area in the new I-1 district included all the area in the old I-1 district plus additional area of roughly the same size. Landfills for solid waste disposal were a conditional use in the new I-1 district under the following conditions:

1. Provided the rules and regulations of the Commonwealth of Pennsylvania and the Department of Environmental Resources are met, including the issuance of all required permits for a solid waste disposal operation.

2. Provided all permits required by any ordinance of Greene Township for the hauling of solid waste material to and from the landfill site over the roads and highways of the township and as relates to the solid waste operation and its location and that all provisions of the township ordinances, including but not limited to the Greene Township Solid Waste Ordinance will be met and complied with.

3. Provided that any such solid waste disposal operation must be owned or operated by Greene Township or by a solid waste authority duly formed and authorized in accordance with all applicable laws and regulations and as provided for in the Greene Township Solid Waste Ordinance.

4. Provided any such operation would not constitute a nuisance to the health, safety and welfare of the community or to adjacent landowners.

1985 Ordinance, art. X, §1007.B, Record item Y2 at 15.

Solid waste was defined in section 301 of the 1985 Solid Waste Ordinance as: "Any waste, including but not limited to municipal, residual or hazardous wastes,

including solid, liquid, semi-solid or contained gaseous materials." Record item Z2 at 9. Section 402(a) of the 1985 Solid Waste Ordinance limited the type of solid waste which could be disposed of in landfill operations to "stone, soil, or combinations thereof and demolition waste limited to Class III as defined by DER."[8] *Id.* at 10.

Around the same time as the Supervisors were considering Kuhl's application, Albert and Josephine Ganzer (Ganzers) filed a request for a curative amendment with the Supervisors, seeking to have the 1976 Ordinance amended to allow them to establish a solid waste disposal landfill. The Supervisors denied their request on the basis of the "pending ordinance doctrine." The Ganzers appealed to the trial court. On October 21, 1985, the trial court granted a petition (filed by the Supervisors, Kuhl and the Ganzers) to consolidate the Kuhl and Ganzers appeals "as to the issue of the pending ordinance doctrine only."

The Supervisors filed a stipulation of facts with the trial court, which detailed the history of the amendment to the 1976 Ordinance and the adoption of and amendment to the solid waste ordinance. On July 2, 1986, the trial court issued its opinion in which it concluded that the Supervisors had erred in relying on the pending ordinance doctrine. The trial court ordered that:

---

[8] DER defines demolition waste as:

*Class I*—Waste materials limited to soil, rock, stone, gravel, brick, block, and concrete.

*Class II*—Waste materials resulting from land clearing, grubbing, and excavations which may include trees, brush, stumps, vegetative material, and Class I waste.

*Class III*—Waste materials resulting from the construction or demolition of buildings and other structures which may include, but are not limited to wood, plaster, metals, asphaltic substances, and Class I and Class II wastes.

25 Pa. Code §75.33(b).

1.  The Supervisors of Greene Township shall grant Mr. Kuhl's conditional use application; and
2.  Upon petition by the Ganzers, the Civil Division of this Court shall conduct a hearing on the merits of the Ganzers' substantive challenge or refer the matters to a referee.

The Supervisors filed a motion for judgment notwithstanding the verdict and a new trial. The trial court, on July 21, 1986, denied the motion on the basis that it had "neither conducted a trial nor rendered a verdict" but had "rendered judgment on the record." On August 1, 1986, the Supervisors filed a notice of appeal to this court, contesting the trial court's decision only insofar as it applied to the Kuhl conditional use application.

The Supervisors raise two distinct issues for this court[9] to resolve: (1) whether the trial court erred in its determination that the pending ordinance doctrine was not applicable to Kuhl's conditional use application and (2) whether the trial court erred in ordering the Supervisors to grant Kuhl's conditional use application.

### PENDING ORDINANCE DOCTRINE

Judge DOYLE, writing for this court in *Marinari v. Zoning Hearing Board of New Hanover Township,* 90 Pa. Commonwealth Ct. 601, 604, 496 A.2d 121, 123-24

---

[9] Our scope of review of a zoning decision, when the trial court takes no additional evidence, is whether the zoning authority committed a manifest abuse of discretion or an error of law. *Pyzdrowski v. Board of Adjustment of City of Pittsburgh,* 437 Pa. 481, 263 A.2d 426 (1970). When the trial court does take additional evidence, our scope of review is whether the trial court committed a manifest abuse of discretion or an error of law. *Id.* Abuse of discretion has occurred when the findings of fact are not supported by substantial evidence, which is relevant evidence a reasonable mind would accept as adequate to support the findings. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

(1985) succinctly summarized the pending ordinance doctrine and its application as follows:

> Under the 'pending zoning ordinance doctrine,' a building permit may be refused if at the time of application there is pending an amendment to a zoning ordinance which would prohibit the use of the land for which the permit is sought. Boron Oil Co. v. Kimple, 445 Pa. 327, 329, 284 A.2d 744, 746 (1971). An ordinance will be considered pending when a governing body has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on such rezoning. Casey v. Zoning Hearing Board of Warwick Township, 459 Pa. 219, 226, 328 A.2d 464, 467 [(1974)]; Boron Oil Co., 445 Pa. at 331, 284 A.2d at 747. A permit may be refused *only* in situations where the municipality acts initially in good faith to achieve permissible ends and thereafter proceeds with reasonable dispatch in considering the proposed rezoning. *Id.* at 333, 284 A.2d at 748; Borough of Brookhaven v. Park. 47 Pa. Commonwealth Ct. 223, 228, 408 A.2d 176, 178 (1979). (Emphasis in original.)

The trial court concluded that the Supervisors "had failed to satisfy all the requirements necessary to lawfully invoke the pending ordinance doctrine to deny Mr. Kuhl's conditional use application. . . ." *Kuhl v. Board of Supervisors of Greene Township,* (No. 474 A-1985, filed July 2, 1986), slip op. at 10. In particular the trial court determined that "the Supervisors had not resolved to consider a particular scheme of rezoning prior to the time Mr. Kuhl filed. . . ." *Id.* at 13. Additionally, the trial court found that even if the Supervisors were considering a particular scheme of rezoning, they had not acted with "reasonable dispatch" in their consideration of the scheme.

The Supervisors do not dispute that the amendment to the 1976 Ordinance as finally enacted was not identical to the amendment under consideration when Kuhl filed his third application. They contend that the law does not mandate that the particular scheme of rezoning under consideration "contain the exact provisions as to location or conditions in its finally enacted form as existed in its pending form at the time the conditional use application as made." Supervisor's brief at 33.

We agree that the law does not require the provisions of the enacted amendment to remain *exactly* the same as those of the proposed amendment in order for the pending ordinance doctrine to apply. However, we are mindful of the Pennsylvania Supreme Court's caution that in determining the applicability of the pending ordinance:

> [W]e must attempt, however difficult the task may be, to balance the interest of the municipality in effecting a change in its zoning laws free from the perpetuation of nonconforming uses against the interest of the individual property owner to be free from lengthy restraints upon the use of his property.

*Boron Oil Co.*, 445 Pa. at 332, 284 A.2d at 747. The number of changes and their degree must be evaluated in determining whether the Supervisors had actually resolved to consider a particular scheme of rezoning. To allow unlimited modification would be inconsistent with the interest of the individual property owner.

In the case before us, we note that a substantial number of changes were made in the location of the sites on which solid waste landfills would be allowed and the districts in which they would be allowed both before and after Kuhl's third application. While it is clear that the subject property is located within a site where solid waste landfills were allowed as a conditional

use under the 1976 Ordinance and where they are allowed as a conditional use under the 1985 Ordinance, it appears that the property was not situated in all the sites which were proposed from 1981 to 1985.[10] Also, prior to Kuhl's third application, the Supervisors enacted a solid waste ordinance which imposed setback requirements for all solid waste disposal areas and required a permit from the Township to operate a solid waste disposal site. Record Exhibit C1. Subsequent to his third application, the Supervisors repealed the seven page solid waste ordinance enacted in 1982 and replaced it with a new, 47 page, solid waste ordinance, Record Exhibit Z2, which, among other things, limited the solid waste which could be disposed in landfills, restricted solid waste disposal permits to one year and imposed performance bonds. Pursuant to section 1007.B.3 and B.4 of the 1985 Ordinance, these requirements would have to be met prior to the issuance of a conditional use permit for a solid waste landfill.

Most significant, though, was the addition to the proposed amendment, *subsequent* to Kuhl's third appli-

---

[10] Patrick Hubert, Chairman of the Board of Supervisors, made the following statement at the public hearing on Kuhl's conditional use application, held December 18, 1984:

A constant . . . aspect of the proposed amendment which has never changed is that the area currently zoned as the I-1 Industrial Park District, the area where Mr. Kuhl's Route 8 site is located and the area which this conditional use request concerns, would be deleted and eliminated as such from the zoning ordinance and the zoning map. Thus, the site involved here has never been included among the sites which the Site Selection Committee, the Planning Commission and the Supervisors have been considering as landfill areas, either as part of an I-2 Heavy Industrial District or as part of an L-1 Landfill District.

However, as we note in the opinion, the 1985 Ordinance did permit solid waste landfills as a conditional use on this property.

cation and its denial based on the pending ordinance doctrine, of the requirement for a conditional use that any "solid waste disposal operation must be owned or operated by Greene Township or by a solid waste authority. . . ." This requirement was enacted and appears in section 1007.B.3 of the 1985 Ordinance. The introduction of this requirement to the proposed amendment is more than a minor change in wording. This requirement prevents Kuhl, as an individual property owner, from being able to obtain a conditional use permit for a solid waste landfill under the 1985 Ordinance. This change subsequent to the Supervisors' denial of Kuhl's third application is of such significance that it alone is sufficient to support the trial court's finding that the Supervisors had not resolved to consider the particular scheme of rezoning finally enacted prior to Kuhl's application.

Therefore, we conclude that the 1985 Ordinance was not "pending" when Kuhl made his application and could not be used as the basis for denying his third application.[11]

## CONDITIONAL USE

An application for a conditional use, provided for in a zoning ordinance, must be granted if the specific requirements on which the use is conditioned have been complied with unless the use will be detrimental to public health, safety, or general welfare. *Warren v. Collier Township Board of Commissioners,* 62 Pa. Com-

---

[11] Because we conclude that the ordinance enacted was not pending at the time of Kuhl's application, we will not address the issue of whether the Supervisors proceeded with reasonable diligence. We also will not consider the Supervisors' argument in response to dicta in the trial court opinion that it had doubts that the Supervisors' actions were taken in good faith.

monwealth Ct. 481, 437 A.2d 86 (1981). Once an applicant has shown compliance with the specific requirements, the burden is on those objecting to the conditional use to show "to a high degree of probability that the use will adversely impact on the public interest; the mere possibility of adverse impact is not enough." *Brentwood Borough v. Cooper,* 60 Pa. Commonwealth Ct. 462, 466, 431 A.2d 1177, 1179 (1981).

The trial court ordered the Supervisors to grant Kuhl's conditional use application because "[t]he written decision of the Supervisors acknowledges that Mr. Kuhl complied with the then-existing specific requirements for a conditional use. Further, the Supervisors were silent on the question of *any* impact on the public interest." *Kuhl v. Board of Supervisors of Greene Township* (No. 474-A-1985, filed July 2, 1986), slip op. at 16 (emphasis in original).

The Supervisors contend that the trial court took additional testimony and, therefore, had a duty to decide the case de novo on the merits. In particular, the Supervisors argue the trial court was required to independently determine whether Kuhl had met the three conditions for a solid waste landfill under the 1976 Ordinance and that our scope of review is whether the *trial court* abused its discretion or made an error of law. The Supervisors are correct in their statement that when the trial court takes additional testimony it must determine the case on the merits rather than determine whether the zoning authority abused it discretion, *Richman v. Philadelphia Zoning Board of Adjustment,* 391 Pa. 254, 137 A.2d 280 (1958), and that, in such an instance, our scope of review would be whether the *trial court* abused its discretion or made an error of law. *Pyzdrowski v. Board of Adjustment of City of Pittsburgh,* 437 Pa. 481, 263 A.2d 426 (1970). However, we hold, for the following reason, that the trial court did not take any additional testimony in this case.

The only additional material[12] in the record is a stipulation of facts, an addendum to that stipulation and associated exhibits. These additional items detail the events surrounding the amendment to the 1976 Ordinance. This material goes solely to the legal issue of whether the pending ordinance doctrine was properly applied and not to the issue of whether Kuhl met the conditional use requirements of the 1976 Ordinance for a solid waste landfill. The Pennsylvania Supreme Court, in a similar situation, concluded:

> Assuming that the ordinance was not pending, the court would then go on to decide whether a special exception should have been granted, *but the record it would use for that purpose would have been developed entirely before the board. The matter presented in the stipulation raised only legal as opposed to factual issues and was not the type of additional evidence that shifts our review from abuse of discretion or error of law on the part of the board to that of the court.* . . . Therefore, we must decide whether in refusing the special exception the board committed a clear abuse of discretion or error of law.

*Marple Township Appeal,* 440 Pa. 508, 512-13, 269 A.2d 699, 701-02 (1970) (emphasis added). Accordingly, we will limit our review on the issue of whether Kuhl satisfied the requirements of the 1976 Ordinance, for a conditional use to operate a solid waste landfill, to a determination of whether the Supervisors committed an abuse of discretion or an error of law.

---

[12] The record does disclose that Kuhl petitioned the trial court for permission to take additional testimony from all the Greene Township Supervisors from 1976 forward on the pending ordinance issue. The trial court granted this petition. However, the record discloses nothing further on this subject and contains no testimony from any Supervisors.

The Supervisors, in their decision on Kuhl's application, made the following conclusion of law:

> In summary, this Board has determined that even though Mr. Kuhl apparently now has met the requirements of the zoning ordinance for operation of a landfill on the subject premises as a conditional use, the pending ordinance rule as it has been applied by the courts of this Commonwealth prevents us from approving the instant request.

We have already concluded that the Supervisors erred as a matter of law in applying the pending ordinance doctrine because the ordinance finally enacted was not "pending" prior to Kuhl's application. The Supervisors contend that if the pending ordinance doctrine was an improper basis for their decision, the conditional use application may still not be granted because there is no evidence in the record made before the Board that Kuhl had complied with the solid waste ordinance in effect at the time of his third application.

It is true that no evidence exists in the record that Kuhl had met the requirements of the 1982 Solid Waste Ordinance at the time of his third application. However, Kuhl made his initial application for a conditional use permit for a solid waste landfill on this site in 1981, prior to *any* action on the part of the Supervisors to consider a solid waste ordinances. In *Borough of Brookhaven v. Park,* this court determined that date of the application for a building permit to construct an addition to his building, for purposes of determining whether a pending ordinance would prevent issuance of the permit, was the *first time* he submitted his plans for approval and not the date he resubmitted them with additional details requested by the zoning officer. The situation here is not identical because in *Borough of Brookhaven* the parties had agreed that the proposed

addition conformed to the zoning regulations in effect when the plans were first submitted. Here Kuhl's reapplications were required because not all the specific requirements of the 1976 Ordinance had been met.

However, we are compelled by the circumstances of this case to hold that the specific requirements in effect as of the date of Kuhl's application in April, 1981 are those which must be met. In 1981 when Kuhl made his first two applications, there was no solid waste ordinance in effect. In fact, the Supervisors did not even indicate they intended to enact a solid waste ordinance until October 1981, after their denial of Kuhl's second application. To permit them at this point in time to insist that the 1982 Solid Waste Ordinance requirements must be met would permit them to circumvent their own finding of fact, supported by substantial evidence in the record made before the Supervisors, that "the conditions which Mr. Kuhl was unable to meet on his prior request for conditional use approval have now been satisfied." The situation present in this case closely mimics that described by the Pennsylvania Supreme Court in *Commercial Properties, Inc. v. Peternel*, 418 pa. 311, 312, 211 A.2d 514, 519 (1965):

> [W]e impute no personal vindictiveness to the township officials who apparently were striving to maintain the high character of their bailiwick and to represent the desires of their constituency. . . . When plaintiffs set out to construct a shopping center on their property, they had every right to do so. But at each step of the way they were met with obstructionism and hastily erected barriers. As plaintiffs overcame each objection or complied with each request, township officials were busily erecting new barriers. Plans revised to meet objections were met with additional objections, and requests for approval were summarily cast aside.

Here the amendments and enactments appear to have been directed at preventing all solid waste landfills in Greene Township. No landfills were permitted in the Township prior to the enactment of the 1976 Ordinance and *none* were approved while that ordinance was in effect.[13]

The Supervisors' final argument is that there is uncontested evidence that granting the conditional use application would have an adverse impact on the public interest. The evidence they refer to is the testimony presented at the September 25, 1985 public hearing held immediately prior to the enactment of the 1985 Ordinance. However, that evidence may not be considered. It was submitted on the legal issue of the applicability of the pending ordinance doctrine as a basis for denying the application. We are reviewing only the record made before the Supervisors on Kuhl's application to determine if the conditional use should have been granted. The Supervisors found as fact that "no specific testimony was offered at the hearing to indicate that . . . the proposed landfill operation would be a nuisance to the health, safety and welfare of the community." Our review of the record discloses no evidence was presented on this issue.

As previously noted, the burden is on the objectors to show a conditional use application is adverse to the general public. Because that was not done and because the record made before the Supervisors contains substantial support for the Board's finding that Kuhl had met the specific requirements for a conditional use under the 1976 Ordinance as of April 1981, we conclude

_____

[13] Stipulation of Fact No. 90 contains the following statement: "No solid waste facilities are currently operating within Greene Township nor have any, in the view of the Board of Supervisors, lawfully operated within Greene Township since the adoption of the zoning ordinance on October 19, 1976."

that it was an error of law for the Supervisors to deny Kuhl's conditional use application for a solid waste landfill.

Accordingly, the order of the Court of Common Pleas of Erie County is affirmed.

ORDER

AND NOW, January 21, 1988, the order of the Court of Common Pleas of Erie County in the above-captioned case is affirmed.