554 A.2d 149

Cherry Valley Associates, Appellant *v.* Stroud Township Board of Supervisors, Appellee.

Argued October 31, 1988, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

Mark P. Pazuhanich, Hanna, Young & Upright, for appellant.

Thomas E. Fasching, with him, Bernard M. Billick, Robinson, Hoffner & Billick, for Appellee.

OPINION BY JUDGE PALLADINO, February 1, 1989:

Cherry Valley Associates (CVA) appeals from a decision of the Court of Common Pleas of Monroe County (trial court) which affirmed the decision of the Board of Supervisors of Stroud Township (Board) denying CVA's request for preliminary approval of a Planned Unit Development (PUD) and a conditional use permit for such development. CVA also appeals the portion of the trial court's decision which remanded to the Board, for review, the Board's denial of CVA's revised applications for approval of a PUD.

CVA, a partnership of Gene Paul Percudani and Vintage Homes, Inc., owns approximately 190 acres of property with 30 acres in Smithfield Township and approximately 160 acres in Stroud Township (Township). At all times relevant to this case, the property in question was zoned S-1, a special or conservation district.[1] In February of 1985, CVA filed with the Board a formal application seeking: 1) preliminary approval of the PUD,

---

[1] Section 3.402 of the Stroud Township Zoning Ordinance states as follows:

Intent for Special and Conservation District (S-1)—
The purpose of the Special and Conservation District is to preserve the open space, the farms, forests, swamps, scenic viewpoints, water recharge or potential water storage areas that are in the more remote sections of the Township. Large lot residential development with on-lot water and sewerage utilities would be compatible with this District's intent. Resort development would also fit in this zone.

encompassing the construction of 250 townhouses; 2) a conditional use permit for the development; and 3) final approval of Stage 1 of the PUD. CVA's application was filed pursuant to two Stroud Township ordinances, namely, the Stroud Township Zoning Ordinance (Zoning Ordinance), which allows PUDs as a conditional use in an S-1 district, and the Stroud Township Subdivision Ordinance (Subdivision Ordinance), which regulates the subdivision and development of land within Stroud Township.

Pursuant to the Zoning Ordinance and Subdivision Ordinance, CVA's application was referred to the Stroud Township Planning Commission (Commission) for review.[2] The Commission reviewed CVA's applications at several public hearings, following which the Commission recommended approval of the plan. Thereafter, two public hearings were held before the Board. After the Board had advertised the first public hearing on CVA's proposal, but before the hearing took place, CVA deleted its request for final approval of Stage 1 of the PUD. Following the public hearings, the Board denied CVA's application, noting a myriad of reasons that shall be discussed more fully later.

CVA appealed the denial to the trial court alleging that the Board erred in denying the application and that the Board had acted in bad faith and denied CVA due process. While its appeal to the trial court was pending, CVA submitted to the Board two revised applications to construct a PUD on the property in question. The revised applications called for the construction of 88 townhouses, with the right to expand to 250 townhouses. After

---

[2] Section 4.403 of the Zoning Ordinance provides that conditional use requests are to be referred to the Commission for review and recommendation; section 2.100 of the Subdivision Ordinance calls for submission of plans to the Commission for review.

reviewing the revised applications, the township engineer, by letter, recommended that the Commission deny the applications. Thereafter, the Commission recommended to the Board that it deny the second applications. Without holding any hearings, the Board denied the applications, adopting as its reasoning the letter from the township engineer to the Commission. CVA appealed the second denial to the trial court.[3]

CVA's appeals were consolidated, and the trial court accepted additional evidence on the limited issues of whether the Board had acted in bad faith or denied CVA due process. The trial court determined that the Board had not acted in bad faith or denied CVA due process. With regard to the merits of the Board's denial of CVA's applications, the trial court affirmed the Board's denial of CVA's original application, and remanded to the Board its denial of the revised applications. CVA has appealed to this court all aspects of the trial court's decision.

We begin by noting that the portion of the trial court order remanding to the Board is clearly interlocutory and therefore not appealable. *Municipality of Bethel Park Appeal*, 51 Pa. Commonwealth Ct. 128, 414 A.2d 401 (1980). Accordingly, that aspect of the trial court decision will not be further considered.

With regard to the original application, CVA asserts that the Board erred in: 1) relying on requirements not contained in the ordinances; 2) relying on requirements not applicable to a request for preliminary approval of a development; and 3) basing its denial on findings of non-compliance that are not supported by substantial

---

[3] Following CVA's second appeal to the trial court, a group of neighboring property owners filed a petition to intervene in the action, which petition the trial court denied. This court affirmed the denial. *Cherry Valley Associates v. Stroud Township Board of Supervisors*, 109 Pa. Commonwealth Ct. 246, 530 A.2d 1039 (1987).

evidence. In addition, CVA argues that the Board acted in bad faith.

First, we note that the procedure in this case requires that we employ two scopes of review. Where a trial court takes additional evidence in a case such as this, we review whether the *trial court* abused its discretion or committed an error of law. *Lamb v. Zoning Board of Adjustment of the Borough of Ambridge,* 111 Pa. Commonwealth Ct. 534, 534 A.2d 577 (1987). Where no additional evidence is taken by the trial court, we review whether the *Board* abused its discretion or committed an error of law. *Board of Supervisors of Greene Township v. Kuhl,* 112 Pa. Commonwealth Ct. 624, 536 A.2d 836 (1988). As noted earlier, the trial court took additional evidence, but limited it to the issues of bad faith and due process. Accordingly, we will review the trial court's decision with regard to the bad faith issue and the Board's decision with regard to CVA's other arguments on appeal to this court. *See Kuhl.*

## DENIAL OF THE ORIGINAL APPLICATION

Before reviewing the Board's decision, we must first determine which provisions of the Pennsylvania Municipalities Planning Code[4] (MPC) govern this action. The trial court held that Article 7 of the MPC, Planned Residential Development,[5] was controlling. We must disagree. Section 702 of the MPC, 53 P.S. §10702, provides that the governing body of each municipality may enact ordinances for planned residential development. The Township has not enacted such an ordinance. Instead, Township zoning matters are governed by the Zoning Ordinance, and multi-lot development is governed by the Subdivision Ordinance. The Subdivision

---

[4] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10101—11202.

[5] 53 P.S. §§10701-10712.

Ordinance states that it was adopted pursuant to the MPC, but does not reference a particular article of the MPC as the enabling legislation. Although the Board has not objected to the trial court's conclusion that Article 7 of the MPC governs, our review of the MPC, the Zoning Ordinance and the Subdivision Ordinance persuades us that Article 7 of the MPC does not govern this action.

Our conclusion is premised on Article 5 of the MPC, 53 P.S. §§10501-10516. Section 501 of the MPC, 53 P.S. §10501, provides that the governing body of a municipality may enact a subdivision and land development ordinance. Section 501 also contemplates that a municipality might enact both a subdivision ordinance and an Article 7 planned residential development ordinance.[6] Thus, a planned residential development ordinance is not in lieu of a subdivision ordinance, and the existence of a subdivision ordinance, without a planned residential development ordinance, does not lead to the inevitable conclusion that a subdivision ordinance providing for planned unit development is a planned residential development ordinance. The Township has labeled its relevant ordinance as a subdivision ordinance; accordingly, the relevant article of the MPC is Article 5, which governs subdivision and land development.

---

[6] Section 501 states, in pertinent part:

> In the case of any development governed by an ordinance adopted pursuant to Article VII, however, the applicable provisions of the subdivision and land development ordinance shall be as modified by such ordinance and the procedures which shall be followed and the approval of any plat and the rights and duties of the parties thereto shall be governed by Article VII and the provisions of the ordinance adopted thereunder.

53 P.S. §10501. *See Board of Supervisors of Charlestown Township v. West Chestnut Realty Corp.*, 110 Pa. Commonwealth Ct. 481, 532 A.2d 942 (1987), *petition for allowance of appeal denied*, 519 Pa. 657, 546 A.2d 61 (1988).

Inasmuch as Article 5 governs this action, we must agree with CVA's contention that many of the Board's stated reasons for its decision cannot support the denial of CVA's application. Section 508(2) of the MPC, 52 P.S. §10508(2), provides that where the governing body denies approval of an application, "the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon." Of the Board's numerous stated reasons for denial, fifteen reference a specific Zoning Ordinance or Subdivision Ordinance section. Our review is limited to those specifically referenced reasons for denial. *See Croft v. Board of Supervisors of Middletown Township,* 76 Pa. Commonwealth Ct. 488, 464 A.2d 625 (1983).

As noted earlier, CVA deleted its request for final approval of Stage 1 of the development prior to any public hearings on the matter. Accordingly, the requests before the Board were for preliminary approval of CVA's plan under the Subdivision Ordinance and a conditional use permit under the Zoning Ordinance. The Board's decision states that CVA's plan does not comply with the following provisions of the Township's Subdivision Ordinance: §2.302C.3.b.(ii); §2.302C.4.b.(iii); §2.402; §2.402A; §2.405.

We begin by noting that the provisions of sections 2.402, 2.402A and 2.405 are, by their terms, applicable only to approval of final plans. Because CVA sought preliminary approval under the Subdivision Ordinance, the provisions applicable to final approval cannot form a proper basis for denial. Thus, we turn to the other two sections cited by the Board as grounds for denial. Section 2.302C.3.b.(ii) states:

Certification of central water supply system:

. . . .

ii) The approval of the subdivision shall be conditioned upon the receipt by the Township of the approval of the system by the appropriate agencies prior to Final Plan submission.

Section 2.302C.4.b.(iii) states:

Certification of a central sewage disposal system:

. . . .

iii) The approval of the subdivision shall be conditioned upon the receipt by the Township of the approval of the sewerage and treatment system by the appropriate agencies prior to Final Plan submission.

The only fair reading of these provisions indicates the Township's intent is to require that approval of subdivision plans be conditional, *i.e.*, conditioned upon receipt of approval by the appropriate agencies prior to final plan submission. Accordingly, these sections do not provide a basis for denial, but, rather, provide the Board with the authority to make approvals conditional. As our discussion makes clear, the Board's denial of preliminary approval under the Subdivision Ordinance was not warranted. *See Goodman v. Board of Commissioners of the Township of South Whitehall,* 49 Pa. Commonwealth Ct. 35, 411 A.2d 838 (1980).

## CONDITIONAL USE PERMIT

Next, we turn to the Board's denial of a conditional use permit under the Zoning Ordinance. The Board's decision states that CVA's application fails to meet four of the requirements for a conditional use permit. The Board's findings of fact on these issues are as follows:

(e) Applicant cannot provide twenty five [sic] percent of total common open space area suitable for intensive use as an active recreation area be-

cause of topography and cover as required by paragraph f (2) of Use Class No. 20.

. . . .

(g) Schedule III of the Zoning Ordinance requires Applicant to provide four parking spaces for each three units. Applicant has not provided sufficient parking spaces to meet this requirement in that the only designated parking spaces are a single car garage for each unit. Additionally, Applicant's Declaration of Covenants preclude parking in driveways or open common areas.

. . . .

(j) Applicant has not complied with the requirement of paragraph K, of Use Class No. 20, in that no application has been made for a Special Use Permit to authorize installation of water and sewer lines in a flood plane [sic]. Supervisors are unable to make a determination based upon the present record whether Applicant meets the requirements for such special use.

. . . .

(o) Applicant has failed to provide off street parking and loading as required in Section 5.500 of the Zoning Ordinance so as to minimize interference with traffic on the local roads or streets and thereby jeopardizes the public health, safety, welfare and convenience of citizens of Stroud Township.

These findings of fact, although citing specific provisions of the Zoning Ordinance, do not refer to the deficient areas of the application. As such, effective appellate review is impossible.[7] Accordingly, we will remand with instructions on this issue.

---

[7] Furthermore, we note that the certified record does not contain CVA's original application. Thus, even if the Board's findings

## BAD FAITH

Finally, CVA contends that the Board acted in bad faith. CVA argues that the conduct of the township engineer evidences bad faith on the part of the Board. Specifically, CVA argues that the township engineer, who advised both the Planning Commission and the Board, was adversarial and presented "laundry lists" of objections to CVA's applications. Also, CVA contends that the Board's refusal to allow "meet and discuss" sessions so that CVA could respond to objections resulted in denying CVA an opportunity to respond to stated objections. Further, CVA argues that the township engineer offered advice in areas beyond his engineering expertise, and, despite the presence of the Board's legal counsel, engaged in extensive cross-examination of CVA's witnesses. Finally, CVA contends that after its applications were denied, the Township rezoned the property in question, further evidencing the Township's bad faith.[8]

As noted earlier, the trial court, after taking additional evidence on this issue, concluded that the Board had not acted in bad faith. Our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Kuhl.* For the reasons which follow, we affirm the trial court's decision on this issue.

CVA argues that the township engineer, Leo Achterman, acted as an adversary to the plan and consistently presented "laundry lists" of objections to the development. However, as noted by the trial court, one of CVA's witnesses conceded that Mr. Achterman's concerns were

---

of fact were sufficient for review, appellate resolution would be impossible without review of the original application.

[8] The trial court held, and the parties do not dispute, that the S-1 zoning classification in place at the time of CVA's applications is the applicable classification.

legitimate, N.T. at 85-88, and that his comments were limited to the plan. *Id.* at 85.

CVA next contends that the Planning Commission and township engineer refused to have "meet and discuss sessions" with the developers. Mr. Achterman testified that the Board, apparently concerned with possible violations of public meeting laws, did indeed direct that no private meetings be held with the developers. N.T. at 176. However, the developers were given numerous opportunities to present their plan at public Planning Commission meetings. *Id.* at 176-77. Also, as noted by the trial court, there is no requirement that a planning commission have "meet and discuss" sessions with a developer. *Cf. Raum v. Board of Supervisors of Tredyffrin Township*, 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977) ("When a developer undertakes the preparation of major development plans, the normal practice in most townships includes . . . meet and discuss consultation.").

CVA next contends that the township engineer cross-examined CVA witnesses. Transcripts of the testimony before the Board demonstrate that Mr. Achterman did question CVA witnesses at the hearings before the Board. However, there is nothing in the record which establishes any prejudice, harm or bad faith on the part of the Board with respect to Mr. Achterman's questioning of witnesses. Mr. Achterman, at the request of the Planning Commission and Board, reviews plans for compliance with the Township's ordinances. It is not disputed that he serves only in an advisory capacity.

Finally, CVA asserts that the change in zoning enacted subsequent to CVA's application evidences the Board's bad faith. Once again, however, there is nothing in the record indicating that the rezoning resulted from any bad faith on the part of the Board.

In short, the record does not support a finding of bad faith. Accordingly, we will affirm the trial court's conclusion that the Board did not act in bad faith.

## ORDER

AND NOW, February 1, 1989 the order of the Court of Common Pleas of Monroe County: 1) is affirmed insofar as it dismisses the claim of bad faith; 2) is reversed insofar as it affirms the Board of Supervisors' denial of preliminary approval; and 3) is vacated insofar as it affirms the Board's denial of a conditional use permit.

The case is remanded to the trial court which is directed to remand the case to the Board with instructions to the Board to: 1) grant preliminary approval of the proposed development plan subject to such conditions as the Township Subdivision Ordinance allows; and 2) make findings of fact on the conditional use issue which include reference to the provisions of the original application which the Board deems not in compliance with the Township's Zoning Ordinance.

Jurisdiction relinquished.