Boron Oil Company, a Corporation *v.* L. C. Kimple, Borough Manager, Administrative Officer of the Zoning Ordinance of the Borough of Beaver.

Argued October 20, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*Robert L. Orr,* with him *Orr & Orr,* for appellant.

*Norman S. Faulk,* Borough Solicitor, for appellee.

OPINION PER CURIAM, December 29, 1970:

The judgment of the Court of Common Pleas of Beaver County is affirmed upon opinion of Judge JAMES E. ROWLEY.

---

Opinion by Judge BARBIERI, in support of the order *per curiam,* filed December 29, 1970:

I join with the majority, but feel that in disposing of this appeal some comment supplementing what the lower court has said is in order.

As an appellate review body I think we should affirm for two reasons. First, with the majority of this court I accept Judge ROWLEY's legal conclusions as set forth in his opinion of February 17, 1970, but I do so because I believe that his views are now supported by the Supreme Court's decision in the case of *Mutzig v. Board of Adjustment of the Borough of Hatboro,* 440 Pa. 455, 269 A. 2d 694 (1970), decided on October 9, 1970. Although three opinions were filed in *Mutzig,*

there is unanimity that a zoning ordinance is considered to be "pending" when there is a ". . . public declaration by the municipality that it intended to rezone the area. . ." *Lhormer v. Bowen,* 410 Pa. 508, 511, 188 A. 2d 747, 748 (1963).

My second reason is that there is sufficient legally competent evidence in the record in this case to support the controlling findings of the trial judge who sat and tried this case without a jury. In the *en banc* decision below, in discussing exceptions to the trial judge's holding and verdict, the following appears: ". . . we adopt the findings, conclusions, and discussion of the trial judge as the findings, conclusions, and discussion of the Court en banc."

Judge ROWLEY'S findings which I believe are supported and are binding upon this court are contained in the following statement by him in his opinion: "Moreover, the zoning commission, pursuant to §3206 of the Borough Code, on July 8, 1968, had given public notice of a public meeting at which it would present the new proposed zoning ordinance. This was a public declaration that the Borough intended to rezone the area in question. Under these circumstances we are of the opinion that the new zoning ordinance was 'pending' at the time plaintiff applied for its permit. For this reason defendant was justified in refusing to issue the permit requested by plaintiff. It is also to be noted that plaintiff, more than two weeks after public notice was given, and just two days before the public meeting of July 24, 1968, presented its application to the defendant. Thus, it is proper to conclude that plaintiff was attempting to establish a nonconforming use before the ordinance could be enacted by the borough council. The borough's subsequent enactment of that ordinance requires that we approve the action of the defendant in refusing plaintiff's application, and enter a verdict for the defendant."

Since the facts as found are supported by the record and require the legal conclusions reached by Judge ROWLEY, this appeal must be dismissed.

DISSENTING OPINION BY JUDGE CRUMLISH, JR., filed December 29, 1970:

This appeal, transferred to us under the Appellate Court Jurisdiction Act, concerns the refusal by the Court of Common Pleas of Beaver County to issue an order in mandamus instructing the Zoning Administrative Officer of the Borough of Beaver to issue to plaintiff a permit for the erection of a gasoline service station in that Borough. The officer's refusal to issue the permit was premised on the belief, sustained by the court below, that there was a pending zoning ordinance which would prohibit the requested use. I do not agree.

Because of the complexity of the issue involved, it is necessary to understand the chronology of the events. In April 1966, the Borough Council created a planning commission to frame and propose changes in the Borough's zoning. This commission met with Council in July 1967 to discuss a master plan for the Borough, and on December 7, 1967, Council formally authorized the preparation of such a master plan by the county planning office.

On March 14, 1968, appellant obtained an option to purchase the property in question, and subsequently made a market analysis and traffic survey of the area. On April 10, 1968, the option was exercised, and thereafter appellant ordered a property survey, title abstract, and plot plan prepared. Meanwhile on April 9, 1968, the planning commission was appointed by Council to be the borough zoning commission.

In May, 1968, appellant applied for approval of his plot plan to the Commonwealth. On June 26, 1968, this approval was granted. On July 8, 1968, the plan-

ning-zoning commission published notice of a public meeting to be held on July 24, 1968. This July 8th notice, which appeared in the legal column of the local paper, advised that the proposals for the new zoning ordinance would be presented at the July 24th meeting and that these proposals would be available for inspection at the Borough Secretary's office after July 15, 1968.

On July 22, 1968, appellant filed an application for a building permit with the appellee. This application was rejected the next day, July 23rd, by a letter giving as the reason for the refusal the possibility of zoning revision. The purpose of the July 24th meeting was to present and discuss the proposals. The following day, the commission adopted a resolution recommending that the proposed ordinance be introduced in Council. On August 13, 1968, four days after appellant had filed the initial mandamus complaint, this resolution was adopted by Council "subject to change after holding public hearing". Council held public hearings on the proposal September 16, 1968, passed the ordinance on its first reading October 9, 1968 and finally enacted the ordinance on January 14, 1969.

"A building permit may be refused if at the time of application there is pending an amendment to a zoning ordinance which would prohibit the use of the land for which the permit is sought. Shender v. Zoning Board of Adjustment, 388 Pa. 265, 131 A. 2d 90 (1957) ; A. J. Aberman, Inc. v. New Kensington, 377 Pa. 520, 105 A. 2d 586 (1954) ; Gold v. Building Committee of Warren Borough, 334 Pa. 10, 5 A. 2d 367 (1939) ; but cf. Kline v. Harrisburg, 362 Pa. 438, 68 A. 2d 182 (1949)." *Hertrick Appeal,* 391 Pa. 148, 153, 137 A. 2d 310 (1958). It is for us to review the lower court in its determination of whether there was either an amendatory or new zoning ordinance for Beaver Borough pending on July 22, 1968.

Pending ordinance cases before the Supreme Court heretofore and now before us exact the responsibility to weigh the property rights of the individual against the community interest inherent in the police power of the governing body. While it is obvious that we must look to the factual situations which give body to the case law in measuring and settling these interests, we must pursue the rationale which provides the just settlement of the conflict. Why one or more factors shift the balance is of much greater significance than the mere fact that the balance has been shifted.

I believe the underlying policy or rationale in pending ordinance cases is found in this simple proposition: Can an individual property owner be reasonably certain that the status of his property has been changed and that only the normal, generally ministerial functions involved in effectuating the ordinance remain? If he cannot, the government has wrongfully preempted his constitutionally protected property rights.

The most recent decision by our Supreme Court on this point, *Mutzig v. Board of Adjustment of the Borough of Hatboro,* 440 Pa. 455, 269 A. 2d 694 (1970), clearly indicates the court's requirement of certainty and finality to give effect to proposed legislation. In *Mutzig,* the court did not concern itself with the preliminary stages in preparation of the ordinance. It considered the momentum to initiate when the proposal was introduced in Borough Council on April 10, 1967, for hearing and final action by Council. This is what the Supreme Court considered the issue of what is "pending". On April 10, 1967, the proposal was introduced and June 12th was set as the date for public hearing. On May 18th public notice of this hearing *by the Council* was published. Though split in their decision as to which event caused the ordinance to be pending, all members of the court held that one of these occurrences caused that result.

Justice O'BRIEN, in the opinion of the Court, concurred in by two other Justices, and Justice ROBERTS, in his dissent, both agree that " 'public declaration' [of intent to rezone that property] did not occur until the Hatboro Borough Council advertised that a public meeting would be held to consider adopting the zoning amendment." 440 Pa. at 466. Justice POMEROY, whose concurring opinion was joined in by Justice JONES and Justice EAGEN, concluded that the April 10th meeting fixed the terms of the amendment and its date for consideration, making the May 18th notice "but wider dissemination of an already public action." This division relates only to the time at which the imminency of change was clearly conveyed to the property owner.[1]

The controlling effect of this decision upon the case before us stems from the characterization of *Lhormer v. Bowen*, 410 Pa. 508, 188 A. 2d 747 (1963), by Justice POMEROY. In *Lhormer*, the township had publicly, over a period of time, indicated its intent to make some zoning changes. A bill had been prepared and *introduced before Council* more than nine months before the zoning application. It was referred to a commission for study and was reported favorably to Council three

---

[1] In *Mutzig*, an application for a variance was filed after the setting of the date for the Council hearing but prior to public notice of that meeting. The Zoning Board hearing on the variance request was subsequent to the Council's public notice. Justice O'BRIEN concluded that the application alone did not vest any right to the permit where adjudication by the Board was necessary. Therefore, he affirmed the refusal of the permit since the ordinance became pending prior to the Board's adjudication. Justices POMEROY and ROBERTS both found that the time of application is the time when the right to a permit must be weighed. However, Justice POMEROY concluded that the ordinance became pending prior to the application, while Justice ROBERTS concluded that the application predated the pendency of the ordinance. Thus, Justice POMEROY concurred in the decision of Justice O'BRIEN while Justice ROBERTS dissented.

months prior to the zoning application. The court held that the zoning application preceded *any public declaration* of precisely what changes were contemplated.

Justice POMEROY, who concluded that the ordinance in *Mutzig* was pending when formally *introduced* for passage, distinguished *Lhormer* where the preliminary bill had been introduced nine months prior to the application, in that "all that had preceded the permit [in *Lhormer*] was *preliminary consideration* of a possible ordinance, which had not even been drafted in final form." (Emphasis added). "[O]nce the *governing body* of a municipality has made a formal determination to hold a public hearing on a *regularly proposed amendatory ordinance,* that ordinance is pending." (Emphasis added). 440 Pa. at 465.

The same regard for action by the governing body in the process of final passage of the ordinance is likewise found in Justice ROBERTS' dissent. " '[P]ublic declaration' did not occur until the Hatboro *Borough Council* advertised that a public meeting would be held *to consider adopting* the zoning amendment." (Emphasis added). 440 Pa. at 466.

The holding of public hearings on pending legislation is a required step in the final determination of that proposal.[2] Such hearings are followed by final consideration of the legislation and its implementation. Community attention is addressed to specific properties and areas and they no longer become the mere topics of speculation. Direction, practicality and certainty are given to what theretofore were the visions of planners. Public declaration of intent clearly means a declaration by the *governing body* of its intent to *seek implementation* of an amendment or ordinance *drafted in its final form*. In this way an applicant can

---

[2] *Kelly v. Philadelphia,* 382 Pa. 459, 115 A. 2d 238 (1955), where an ordinance was invalidated because the hearing was improper.

distinguish between general considerations of potential changes and specific and imminent changes which will affect him.

I fail to see how, since in *Lhormer* such a declaration of intent was found absent in spite of the introduction of the bill to create the ordinance, we can find such a declaration in the instant case where the municipality's action never rose to the point of a publicly definitive proposal. As of July 22, 1968, Beaver Borough had created a commission to study general rezoning; the commission had given notice of a future hearing; the commission had given notice that its proposals could be viewed at its office. This clearly was no more than "preliminary consideration of a possible ordinance, which had not even been drafted in final form." Indeed, it had not even been placed before the governing body "to consider adopting" or even the drafting of it in final form.[3] Nowhere can I find evidence of the interests of the municipality pervasive enough to subjugate the rights of its citizens.

The reliance by the court below upon *Shender v. Zoning Board of Adjustment*, 388 Pa. 265, 131 A. 2d 90 (1957), is misplaced. There, an ordinance which had been in existence two years was stricken down because its enactment was improper due to failure to afford the required notice.[4] The court prohibited the

---

[3] Beaver Borough Councilman McLaughlin at the meeting of July 25, 1968 made successful motion to accept the proposed plan from the commission *"subject to change"* after holding a public hearing at an early date. This suggests the plan was alterable and in no wise definite even after the hearing by the commission and that public hearings like those in *Mutzig* would be held sometime, somewhere. Record page 84a.

[4] The ordinance in *Shender* was invalidated by the Supreme Court in *Kelly v. Philadelphia*, 382 Pa. 459, 115 A. 2d 238 (1955) because it had been enacted with only eight days notice prior to public hearing when fifteen days notice is required.

consideration of new applications until a new ordinance could be passed. It was obvious to all involved that the township was specifically rezoning the property. For all practical purposes, the ordinance which had been in effect for two years was pending before Council for proper passage for that period. The case before us is inapposite from this situation in that the proposals had never reached Council prior to the application.

It is unthinkable that the police power of municipalities is extended so that mere speculation of its use with respect to private property overwhelms the constitutional rights of its individual citizens. *Mutzig* and *Lhormer* obviously evidence the contrary intent. The prospective usurpation of individual rights must be definitive and reasonably certain.

"An owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home (or property) in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional." *Lened Homes, Inc. v. Dept. of Licenses*, 386 Pa. 50, 54, 123 A. 2d 406 (1956). But what is the effect of these words without the known certainty of the law? It is fundamental that survival in our sytem of governmental society calls for order and certainty in the community of citizens.

It is incomprehensible that the rules of the game could be changed at half-time without thunderous dissent bordering on grandstand revolution. Are we not really addressing ourselves to the same question? Organized society cannot succeed in its effort to obtain security unless we embark knowing that there is rea-

sonable certainty that our course of action will be protected and sustained by orderly application of the known law.

This unalienable right to order and certainty mandates that a zoning change can only be properly effective when the individual's reliance upon the order of law is clearly protected. As of July 22, 1968, this was denied. The proposals of the commission did not constitute a pending ordinance and the appellant's right to a permit was unfettered. He was unjustly and improperly denied his constitutional right.

"Where the right to the permit is clear, the issuance thereof by the proper official is no more than the performance of a ministerial act which admits of no discretion in the municipal officer, and mandamus is both appropriate and proper to compel performance: Baldwin Borough v. Matthews, 394 Pa. 53, 145 A. 2d 698 (1958); Coyne v. Prichard, 272 Pa. 424, 116 A. 315 (1922); and Herskovitz v. Irwin, 299 Pa. 155, 149 A. 195 (1930)." *Lhormer, supra,* at 514. I would reverse.

