## Commonwealth v. French

*Brendan J. Vanston, Hobbs & Morgan*, for Commonwealth.

*Gerald C. Grimaud*, for defendants.

GARDNER, *P.J.*, April 28, 1978—In the above-captioned proceedings, defendants, Elmer French, Hazel French, and Vaughn Howell, were convicted

by a district justice of the peace for violation of an "outdoor amusement" ordinance enacted by the Board of Supervisors of Washington Township, Wyoming County, Pa., on July 8, 1977, and by its provisions made effective five days thereafter. Fines of $100 for each defendant and the costs of prosecution were imposed.

The ordinance involved in this matter proscribes the unlicensed conduct of, or, as an owner or controller of premises, the permitting of the unlicensed conduct of an "outdoor amusement." The ordinance contains provisions for an application for license, and provisions pertaining to parking, fencing of the amusement site, garbage and debris removal, compliance bonding, liability insurance, and a license fee.

The ordinance provides for criminal penalties for violation of any provision, or of a license issued under its terms—a fine of not more than $300 for each violation and costs, with imprisonment as the sanction against default of payment.

The convictions were appealed under the provisions of Rule 67 of the Pennsylvania Rules of Criminal Procedure.[1]

Based upon the evidence received at a hearing on January 5, 1978, we find the following facts:

1. Elmer French and Hazel French, his mother,

---

1. The proceedings also included an Application for Pre-Trial Relief presented on December 23, 1977, by the defendants. We granted a rule to show cause on the Commonwealth on which a hearing was set for the same time as the de novo hearing required by subsection (e) of Pa.R.Crim.P. 67. Because we did not believe that pre-trial relief procedures applied to summary appeals, the situation was correctly called, at the

are owners of 107 acres in Washington Township, Wyoming County, Pa.

2. Elmer French commenced thinking about a Blue Grass concert approximately two years ago and in March 1977 began serious intensive planning.

3. On April 7, 1977, Elmer French contacted the Department of Environmental Resources of the Commonwealth of Pennsylvania and one of the Supervisors of Washington Township and told them of his plans and the scope of the proposal.

4. At a meeting of the board of supervisors of Washington Township, Pa., on May 4, 1977, Elmer French asked the board to determine within two weeks if there was "going to be any problem" before further money investment in the project.

5. At a special meeting of the board of supervisors on May 23, 1977, explanations of the project were made by Elmer French and others.

6. On July 8, 1977, the said board of supervisors enacted an ordinance requiring the licensing of "outdoor amusements."

7. Preparation of the site by defendants Elmer French and Vaughn Howell, and others, which commenced approximately April 1, 1977, continued throughout the period of consideration of the feasibility of the ordinance by the board of supervisors.

8. Defendants did not obtain a license under the provisions of the ordinance, did not post a bond as

---

hearing, a "procedural dither." However, the rather peculiar combination of proceedings at the January 5, 1978 hearing and argument have not resulted in any transgression of the rights of defendants in view of the conclusion that we have reached.

required by the ordinance, and did not submit a certificate of insurance, as required by the ordinance, to the board of supervisors.

9. Elmer French applied for a license under the provisions of the ordinance on July 15, 1977. No action was taken thereon.

10. A Blue Grass concert, sponsored by Elmer French and Vaughn Howell, was held on July 17, 1977, on the French lands referred to in paragraph 1 of these findings.

At the outset, we note that this case is a criminal proceeding which imposes upon the Commonwealth a burden to prove all elements of the alleged offense beyond a reasonable doubt. Applied to Hazel French, this means, under the terms of the subject ordinance, that she must have, beyond a reasonable doubt, permitted the conducting or holding of an "outdoor amusement," because the only provision of the ordinance which applies to Mrs. French is section 2, which seeks to impose a license requirement on an owner or controller of real property.

The testimony produced at the hearing was, that Mrs. French was a life tenant of the premises used by the other defendants, further established by Commonwealth's Exhibit No. 1—a deed from defendant Hazel French to defendant Elmer French dated January 27, 1977, and recorded in Wyoming County Deed Book Volume 202 at page 434, which excepted and reserved a life estate in Mrs. French.

There is no further evidentiary mention of defendant Hazel French—nothing to indicate that she even knew of the plans for the event conducted by her son and defendant Howell—other than she did not post a bond with Washington Township Board of Supervisors.

We have no hesitancy in holding that the Commonwealth has completely failed in its burden as to Hazel French, and, consequently, she must be acquitted.

On behalf of remaining defendants, counsel has made an exhaustive argument, asserting invalidity of the ordinance in that (1) there was no provision for a hearing on the question of granting or refusal of a license; (2) the ordinance is arbitrary and discriminatory with reference to particular property, persons, and events; (3) the ordinance is confiscatory; (4) the board of supervisors had no authority to enact the ordinance; (5) the ordinance is ex post facto; (6) the ordinance denies due process; and (7) the ordinance is unconstitutionally vague.

The Commonwealth argues, on the other hand, that the ordinance was necessary, in the opinion of the supervisors after hearing the arguments for and against the concert proposed by defendants, to protect the health and safety of township residents, and that there was no denial of due process because of the hearings held prior to enactment of the ordinance. The Commonwealth also denies that the ordinance is confiscatory, discriminatory, without statutory authority, ex post facto, or vague.

Although we have additional concerns with the subject ordinance,[2] we will base our conclusion,

---

2. For example, we are troubled with the suggestion by defense counsel that the ordinance does not cover sporting events. The Commonwealth asserts that the term "outdoor amusement," defined in the ordinance as "any outdoor theatrical, musical or dramatic performance, festival, or carnival, or any art outdoor exhibition, show, entertainment, or amusement of *similar* nature or kind" (emphasis supplied), is broad enough to cover athletics. This we doubt, and if we are correct,

and hence confine this opinion, to but one contention. We find this ordinance arbitrary, discriminatory, and special legislation as it applied to the event conducted on July 17, 1977, by defendants on the French premises.

Our conclusion is reached in full awareness of the following principles:

1. Every citizen holds his property subject to a reasonable exercise of the police power of a municipality to regulate it in order to secure safety, public welfare, health, peace, public convenience and general prosperity: Perrin's Appeal, 305 Pa. 42, 156 Atl. 305 (1931); White's Appeal, 287 Pa. 259, 134 Atl. 409 (1926).

2. The ordinance involved is presumed to be constitutional, and the burden of proving otherwise is upon one who asserts it: Di Santo v. Zoning Board of Adjustment, 410 Pa. 331, 189 A. 2d 135 (1963).

3. A property owner is entitled to use his property in any way he desires as long as he does not violate any provision of the State or Federal Constitution, or violate any laws or zoning or police regulations which are constitutional: Commercial Properties, Inc. v. Peternel, 418 Pa. 304, 211 A. 2d 514 (1965).

The planning of the "concert" held by defendants was in progress when, ironically, defendant French invited the attention of the board of supervisors by

---

the ordinance would be considered constitutionally arbitrary and discriminatory as special legislation directed toward a particular activity. Further, we are struck by the possibility that, if the Commonwealth is correct, a license (including insurance, bond, etc.) would be required for a Little League or sandlot ball game. On the other hand, if defense counsel is correct as to the exclusion of athletics, the Olympic games could be conducted in Washington Township without seeking a township license.

submitting the plans to them in early May 1977. Contact between defendants and the board continued until passage of the ordinance, to become effective four days before the scheduled event.

We have no doubt that no ordinance whatsoever would have been considered or passed if defendants' concert had not been contemplated. Believing this, the conclusion that this legislative effort was aimed at the French premises and the proposed activity of defendants thereon is inescapable.

Defense counsel has directed our attention to Commercial Properties, Inc. v. Peternel, supra, and we feel, although its supportive value is analogous only since it is a zoning case, that Peternel provides appropriate authority for the instant decision.

In Peternel, a municipality passed a re-zoning ordinance (changing a commercial zone to residential) after knowledge of the desire of a property owner in the affected zone to erect a shopping center. The court found the re-zoning ordinance to be " ' "special legislation,unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it was aimed at this particular piece of property." ' " These words are applicable to the ordinance here in question.[3]

Nothing herein should be interpreted to question the motivation of the board of supervisors. In our opinion, they acted in what they deemed to be the best interests of the citizenry of Washington Township, an understandable feeling in view of the dis-

---

3. The Peternel case was followed in Boron Oil Company v. Kimple, 1 Pa. Commonwealth Ct. 55, 275 A. 2d 406 (1970), and Linda Development Corp. v. Plymouth Township, 3 Pa. Commonwealth Ct. 334, 281 A. 2d 784 (1971).

astrous results of similar events held in other places. We are also aware that this court has the luxury of a decision in a less frenzied atmosphere than may have existed in the early summer of 1977 in Washington Township. However, the very oath under which we proceed—to uphold the Federal and State Constitutions—compels, in our opinion, the result here reached.

## ORDER

And now, April 28, 1978, for the reasons set forth in the opinion of even date in the above-captioned matter, the verdict of the court is not guilty.