## Boni v. Zoning Hearing Board of Fayette County

C.P. of Fayette County, no. 1409 of 2005, G.D.

*Donald McCue,* for appellant Perry Township.
*John M. Purcell,* for appellant Frazier School District.
*Alan Benyak* and *Gretchen Mundorff,* for appellees.

LESKINEN, *J.,* January 31, 2007—This matter comes before the court on the Township's appeal from a decision of the zoning hearing board which granted a special exception for a "methadone treatment facility" under the theory that such a facility is a medical "clinic" under the terms of the zoning ordinance. The Frazier School Board, the landowners, and the prospective purchaser (and operator of the proposed methadone treatment facility) have all intervened.

For reasons set forth hereinafter, this matter will be remanded to the zoning hearing board for further proceedings in accordance with the new Fayette County Zoning Ordinance effective November 1, 2006.

## BACKGROUND

Landowners/intervenors, Laurence A. Bujdos and Louis Waller filed a petition with the Fayette County Zoning Hearing Board requesting that the board grant a

special exception for a "substance abuse treatment program for persons with opiate addictions" on property owned by Mr. Bujdos (currently listed as owned by LLS Realty LLC). The property consists of 5.37 acres in Perryopolis Township on the west side of State Route 51 just north of Perryopolis Borough. Route 51 is a major commuting route between Fayette County and Pittsburgh. The property is zoned "B-1." The Fayette County Zoning Ordinance is in effect, as Perry Township does not have its own zoning. At the time the application was filed, the county zoning ordinance made no specific provision for a "methadone treatment facility," but amendments providing for same were pending.

The original petition was filed on March 29, 2005. As noted, it sought a property use of "substance abuse treatment program for persons with opiate addictions." As reasons for granting the petition, Bujdos and Waller wrote: "Property meet [sic] requirements of local zoning and state requirements as found at Act 10 of 1999." Act 10 deals with "methadone treatment facilities." Evidently when the petition was presented someone wrote "Clinic" next to the property use written in by the applicants, since, as noted above, the ordinance at that time made no express provision for methadone treatment facilities.

The zoning hearing board held a hearing on the petition on May 11, 2005. Only the three proponents of the petition testified. Petitions of various residents opposed to the petition were received, but in the absence of admissible testimony, the petitions were not considered. The board issued Resolution 05-43 approving the special exception with conditions on May 19, 2005. The

within land use appeal was filed by the Township on June 13, 2005 and the other parties intervened thereafter.

Perry Township first objected on the basis that the resolution was signed only by a member of the board, Mark Morrison, who was not present for the hearing, and who had not had an opportunity to review the testimony. This would appear to be fair criticism in the sense that the testimony at the hearing was not transcribed until sometime in 2006, and consists of 163 pages. Clearly, Mr. Morrison could not have reviewed the testimony. However, because of the disposition reached on other grounds, the court need not reach this particular objection.

Perry Township next objected on the general basis that "Petitioners failed to meet the burden of proof in connection with their case." Again, while this point is arguably correct, the instant disposition is made on other grounds and the court need not reach this particular objection.

Next, the Township claims: "There should have been a traffic study successfully completed to indicate the additional ingress and egress to the proposed location." The request for a traffic study was in light of the testimony that there would be approximately 250 persons using the treatment facility every day to receive their methadone, almost all of whom would be making a left-hand turn into and/or out of the facility across two lanes of southbound traffic at a location where there is no dedicated turning lane between the northbound lanes and the southbound lanes. The business district of Perryopolis Borough, immediately south of the proposed site, has a dedicated left-hand turn lane that is obviously appreciably safer. Again, this is a factor worthy of consideration,

but is not the immediate basis for the court's current disposition.

At argument, counsel for the Township asserted that it is unlawful for persons taking methadone to drive a vehicle at all. (There appears to be no pedestrian access to the facility.) Common sense would seem to indicate that we, as a society, would not want persons under the influence of a synthetic opiate driving on public highways. See opinion of the attorney general no. 1, January 11, 1974, 64 D.&C.2d 43, 1974 WL 42930 (Pa.Dept.Just.). However, it is clear that the Pennsylvania Legislature has specifically addressed this objection by allowing an exception from the DUI law for persons taking a Schedule II substance (which methadone is) that is "medically prescribed." See 75 Pa.C.S. §3802 (d)(1)(ii).

In addition, in our current "through the looking glass" world, federal law requires that recovering heroin and morphine addicts be treated as persons with a "disability" under the Americans with Disabilities Act (ADA), and discrimination against such persons could subject the offending state, county or township to the payment of money damages. That may be one of the reasons for the legislature's decision to allow legal methadone users to drive a vehicle; but counties and townships are bound by the same law, and cannot unfairly discriminate in the location of methadone treatment facilities. See *Addiction Specialists Inc. v. Township of Hampton,* 411 F.3d 399 (3d Cir. 2005); *New Directions Treatment Services v. City of Reading,* 2005 U.S. Dist. Lexis 17529 (E.D. Pa. 2005). In fairness, there was unrebutted testimony at the zoning hearing board's hearing in this case that indi-

cated that *medically supervised* methadone users are able to drive safely and normally.

The Township's dispositive objection is noted in paragraph 13 of the appeal. Therein, it states that, "The special exception for a methadone clinic does not exist under B1 .... The zoning plan did not contemplate a special facility such as a methadone clinic to be compared to a hospital or a medical clinic as defined in the ordinance."

The Fayette County Zoning Ordinance has been undergoing a comprehensive revision since at least 2003, which did finally culminate in a completely rewritten zoning ordinance becoming effective on November 1, 2006. Specific provisions governing "methadone treatment facilities" were contained in the proposed new ordinance from its inception in 2003, which changes remained pending throughout the proceedings on the instant petition.

## GENERAL LEGAL BACKGROUND

Zoning law is relatively recent in origin, and was first introduced in crowded American cities because of the clear dangers of fire, contaminated water, inadequate sewage, stench and disease.

"Zoning at first was considered one of the most radical departures from the traditional concepts of private property because it was perceived as prohibiting a citizen from devoting his property to a purpose useful and entirely harmless, in the ordinary sense, in certain districts in a community." *The Law of Zoning and Planning,* Rathkopf, 4th ed., vol. I., pp. 1-10.

50

The United States Supreme Court held zoning to be a valid exercise of a state's constitutional "police power" in the landmark case of *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). That decision justified zoning, in part, on the basis of the existing "law of nuisances," and the court stated:

"A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. . . . Thus, the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. (citation omitted) *A nuisance may be merely the right thing in the wrong place—like a pig in the parlor instead of the barnyard.* If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." (emphasis supplied) 272 U.S. at 387-88 (cited in Rathkopf, *supra,* at pp. 1-10—1-11).

Subsequently, the use of zoning expanded throughout the nation, and the proper subjects of zoning regulation expanded as well. As noted by Rathkopf:

"This further expansion in the lawful scope of the police power, in the context of land use regulation, is marked by the statement of the Supreme Court in the frequently cited case *Berman v. Parke* (citation omitted) (1954) that: 'The concept of the public welfare is broad and inconclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within

the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled.' The statement of the court in *Village of Belle Terre v. Borras* (citation omitted) (1974), also reflects that: 'The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values and the blessings of quiet, seclusion and clean air make the area a sanctuary for people,' and to establish a 'quiet place, where yards are wide, people few, and motor vehicles restricted.' " Rathkopf, *supra,* at pp. 1-12.

Zoning originally was intended to be inflexible (and therefore immune from improper political influence), with the permitted uses of a property finally determined by the zone in which it was situated. In most early ordinances, there were only three zones: residential, commercial and industrial. It soon became apparent that some flexibility was necessary. According to Rathkopf:

"The term 'conditional uses' [here 'special exception uses'] was developed to permit the inclusion into the zoning pattern (either in all zones or in certain particular zones) of uses considered by the legislative body to be essentially desirable, necessary, or convenient to the community, its citizenry, or to substantial segments thereof, but which by their nature or in their operation have (1) a tendency to generate excessive traffic, (2) a potential for a large number of persons to be attracted to the area of the use, thus creating noise or other pollutants, (3) a detrimental effect upon the value or potential development of other properties in the neighborhood, or (4) an extraordinary potential for accidents or danger to public

health or safety. Any one of these alone, or in combination with others, would militate against the establishment of the use at every location in the district or at any location therein without restrictions or conditions—tailored to fit the special problems which the use might present—being imposed thereon.

"The classes of uses which fall naturally into the category of fit subjects for special exception uses are:

"(1) Those which are of an essentially desirable character and which are traditionally located in residential districts but which, since they attract people and, consequently, vehicles in considerable numbers, cannot be located on any parcel of land therein without consideration of existing conditions at the proposed location and of properties neighboring upon the specific site considered, nor without adequate and sufficient safeguards to lessen the impact of adverse factors. In this category, among other uses, are private and parochial schools, religious institutions, hospitals, philanthropic institutions, multi-family housing (particularly for the elderly), fraternal organizations, and some types of clubs.

"(2) Those which are desirable for inclusion within the community for the well-being or convenience of its citizens or a substantial segment thereof, or which constitute a necessary but inconsistent use within a particular district but which similarly require *special consideration of location and site plan because of an inherent tendency to create traffic congestion, noise, density of persons assembling, or which may cause an excessive strain on water resources or sewage disposal facilities, or otherwise adversely affect the public safety or welfare.* In this category are shopping centers, open air recreational

uses—*e.g.,* drive-in theatres, country clubs, beach clubs and community swimming pools, gasoline service stations, public utility installations of all kinds, and similar uses. . . .

"Each of these uses presents special problems which cannot be solved by restrictions of general application to all permitted uses within the area; each of these uses might be suitable for location in an area where certain conditions exist, *i.e.,* on a site of 10 acres, or where other conditions do not exist, for example, within a specified distance from a church or school. These are illustrative of the many planning standards relating to such uses which would permit a finding that a particular use, not to be permitted as a matter of right, would be in reasonable and essential harmony with surrounding uses under certain specified conditions. If the administrative body finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, *subject to such specific safeguarding conditions which the agency may impose by reason of the nature, location, and incidents of the particular use.*" (citation omitted) (emphasis supplied) Rathkopf at pp. 41-2—41-3.

The Commonwealth Court of Pennsylvania has held "that an applicant for a special exception need merely show that his proposed use falls within the ordinance provisions for special exceptions. (citations omitted) Where there are specific criteria set forth in the ordinance, the applicant has the duty of presenting evidence relative to those criteria (citation omitted), but need not affirmatively prove that the proposed use would not adversely affect the health, safety, and morals of the community. (citation omitted) *This is because the* 'legisla-

ture [here the Fayette County commissioners] *in providing for special exceptions in zoning ordinances has determined that the impact of such use of property does not, of itself, adversely affect the public interest to any material extent in normal circumstances, so that a special exception should not be denied unless it is proved that the impact upon the public interest is greater than that which might be expected in normal circumstances.'* (citation omitted) *Those who oppose the application have the burden of proving that the impact of the proposed use will be greater than that which might normally occur* (citation omitted), *and this burden is, in Pennsylvania, 'indeed a heavy one.'* (citation omitted)" (emphasis supplied) Rathkopf, *supra,* pp. 41-58—41-60.

## SPECIFIC LAWS APPLICABLE

This court cannot reject a decision of the zoning hearing board without a thorough review of the law and the evidence in the particular case. This court's "scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law."

As noted above, this case was argued to the court on March 13, 2006. No one requested an opportunity to present additional evidence before this court pursuant to section 1005-A of the MPC, 53 P.S. §11005-A. Parties can request an opportunity to present additional evidence where they can show they were prevented from fairly presenting their evidence before the zoning hearing board. Where no new evidence is presented, this court is bound by the factual findings of the ZHB, but only if those factual findings are supported by substantial evi-

dence. Section 1005-A of the MPC, 53 P.S. §11005-A. *Manor Healthcare Corp. v. Lower Moreland Township,* 139 Pa. Commw. 206, 590 A.2d 65 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 217, 590 A.2d at 70.

Section 602.4 of the zoning ordinance of Fayette County that was in effect on the date of the petition provides:

"602.4 *Special exceptions* The board shall have the power to hear and decide applications for special exceptions listed under section 400 of this ordinance. In considering such applications, the board shall give due regard to the nature and condition of all adjacent uses and structures, and may *impose such requirements and conditions as the board may deem necessary for the protection of adjacent properties and the public interest,* including specific limitations as to future expansion. . . .

"(b) The board shall allow a special exception in any "B" business or "M" industrial district provided that the proposed use meets all of the following standards:

"(1) The location and size of the use, the nature and *intensity of the operations involved* in or conducted in connection with it, its site layout, and *its relation to streets giving access to it shall be such that vehicular traffic to and from the use will not be more hazardous than the normal traffic of the district,* both at the time and as the same may be expected to increase with increasing development of the municipality, *taking into account vehicular turning movements in relation to routes of traffic flow,* relating to street intersections, sight intersections, sight distances, and relation to pedestrian traffic.

"(2) The nature, location, size and site layout of the use shall be such that it will be a harmonious part of the business or industrial district in which it is situated, taking into account prevailing shopping habits, *convenience of access by prospective patrons,* the physical and economic relationships of one type or use to another, and characteristics [sic] *groupings of uses in a commercial or industrial district."* (emphasis supplied)

Section 106 of the zoning ordinance in effect at the time of the petition provides as follows:

"The Comprehensive Development Plan for Fayette County, including the chapters entitled Fayette County's Changing Population, The Economy of Fayette County, Land Use and Zoning, Transportation Planning, Park and Recreation Planning and Housing, is hereby referenced as Fayette County's State[ment] of Community Development Objectives. These objectives include but are not limited to the following.

"(a) Promote the proper distribution of population so as to make the most efficient use of existing community facilities and utility services and to preclude the necessity of extending utility services and installing community facilities in areas where the cost of such extensions and installations is prohibitive.

"(b) *Create living areas and business and industrial districts which are free of incompatible uses.*

"(c) Clearly define the urban and rural sections of the county recognizing different types of land uses and intensities of development which are appropriate depending upon existing land use patterns, topography, accessibility and the existence of, or potential for, utilities and community facilities.

"(d) Protect the environment of the county by giving special attention to preserving and promoting the county's natural assets—woodlands, streams, and rivers and steep slopes.

"(e) *Protect the traffic carrying capacity of principal and minor arterial highways by controlling the type and intensity of use of private land along such highways.*

"(f) Promote the rehabilitation and proper reuse of scarred and misused land and rehabilitation or demolition of deteriorating or dilapidated structures."

Neither party asked the court to take judicial notice of, or provided the court with a copy of, the "Comprehensive Development Plan for Fayette County"; but the board did not cite to it, and neither party cited any portion of it as a reason to accept or to reject the decision of the zoning hearing board.

All parties directed the court's attention to Act 10 of 1999, 53 P.S. §10621, which was passed by the legislature and immediately effective on June 18, 1999. That statute specifically prohibits locating a "methadone treatment facility" within 500 feet of "an existing school, public playground, residential housing area, child-care facility, church, meetinghouse or other actual place of regularly stated religious worship . . . ."

Finding of fact 11 in Resolution 05-43 states that: "The petitioner testified that the proposed facility will be approximately one mile from Frazier School and that the location meets the distance provisions of Act 10 of the Pennsylvania Municipalities Planning Code." However, this does not constitute a factual finding, merely an observation that particular testimony was presented, with-

out determining whether or not it was competent or credible testimony.

Moreover, the new Fayette County Zoning Ordinance, which was pending passage at the time, specifically provides for a "methadone treatment facility" as a special exception use subject to the further limitations that:

"Section 1000-846 (A). 'The facility shall not be established or operated within 1,000 feet of an existing school, public playground, public park, residence, childcare facility, hospital, nursing home, place of worship or place or assembly established prior to the proposed methadone treatment facility unless, by majority vote, the zoning hearing board votes in favor of the issuance of an occupancy permit or certificate of use. One or more public hearings regarding the proposed facility location shall be held within the county following public notice. All property owners located within 500 feet of the proposed location shall be provided written notice of said public hearings at least 30 days prior to said public hearings occurring. The petitioner shall be responsible for obtaining adjacent property owner list at time of application.

"(B) The facility shall not be established or operated within 300 feet of an existing bar, nightclub, private club or liquor store.

"(C) Side and rear bufferyards shall be a minimum of 25 feet in width and should be planted with a combination of deciduous and evergreen trees, shrubs, ornamental grasses and groundcovers.

"(D) Grass, sod, lawn or turf shall not be considered an acceptable plant for use within landscaped bufferyards.

"(E) Facilities, equipment and professional staff to support overnight boarding shall be permitted.

"(F) The zoning hearing board may attach additional conditions pursuant to this section, in order to protect the public's health, safety, and welfare. These conditions may include, but are not limited to, increased setbacks."

The new ordinance also generally allows the zoning hearing board to "attach such reasonable conditions and safeguards in addition to those expressed in this chapter as it may deem necessary to properly implement this chapter and to protect the public's health, safety, and welfare." Section 1000-1103A.

This court has no way of knowing whether the instant petition was filed in order to precede the pending ordinance, colloquially speaking, to "beat it to the punch," or whether the sequence of events was purely coincidental. However, under such circumstances the courts have developed the "pending ordinance doctrine," which requires new development to meet the standards of the ordinance pending at the time the petition for development is filed, providing that the pending standards are ultimately passed. See *Levin v. St. Peters School,* 134 Pa. Commw. 342, 578 A.2d 1349 (1990); *Board of Supervisors of Greene Township v. Kuhl,* 112 Pa. Commw. 624, 536 A.2d 836 (1988); *Boron Oil Co. v. Borough of Beaver,* 1 Pa. Commw. 55, 275 A.2d 406 (1970). In all fairness, the zoning hearing board and the parties could not have known for certain that the pending ordinance would ultimately be passed, but it was obvious that the existing ordinance was completely obsolete and that corrections were imminently necessary. In any event, it would have

been preferable if the parties had presented evidence with respect to the new requirements then pending.

What the pending ordinance makes crystal clear, however, is that the definition of "clinic" contained in the previous ordinance absolutely did *not* include a "methadone treatment facility." Methadone treatment facilities were essentially unknown when the previous ordinance was written. If the previous ordinance was understood to include a "methadone treatment facility" as an ordinary medical "clinic," there would have been no need for the specific definition and specific provisions regarding a "methadone treatment facility" in the new ordinance.

Under the previous ordinance, a "clinic" was defined as: "An establishment where patients who are not lodged overnight are admitted for examination and treatment by a group of physicians practicing medicine together." As noted above, the word "clinic" was not part of the original petition for a "substance abuse treatment facility" until some helpful person evidently suggested that it would *have* to be a "clinic" in order to qualify for approval under the existing ordinance. In that light, it is clear that the testimony presented to the zoning hearing board about there being more than one medical doctor that would ultimately work at the "methadone treatment *clinic*" was deliberately shaped and presented solely to make the facility sound just like any other medical "clinic" (group medical practice) eligible for special exception treatment. The zoning hearing board made no factual finding that there would actually be a "group of physicians practicing medicine together." This court believes such a finding would have been inherently incredible and unworthy of belief.

A trial court has discretion to interpret an ordinance based on its accepted meaning. See *Diversified Health Associates Inc. v. Zoning Hearing Board of Norristown,* 781 A.2d 244 (Pa. Commw. 2001). This court does not believe the term "clinic" in the previous ordinance was ever intended to include a methadone treatment facility.

This court cannot condone creative interpretations of the plain and well-understood meaning of the previous ordinance. If a lawful use was not provided for under that zoning ordinance, the ordinance may have been invalid. A "curative amendment" is provided for under the MPC as a method of correcting such a deficiency. 53 P.S. §10916.1. Thus, there is an orderly procedure for accommodating newly developed lawful uses not previously provided for in a zoning ordinance. There is no valid authority for re-interpreting the ordinance to save the time and trouble of amending the ordinance.

In addition, the board failed to refer to or cite the relevant portions of the ordinance or statutes relied on, with only one exception. That is a major problem in the board's decision in this case, since the zoning hearing board is required to make appropriate references to the ordinance or the MPC pursuant to section 908 of the MPC, 53 P.S. §10908. That section provides that:

"Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. *Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in light of the facts found.*" (emphasis supplied)

This application was "contested." There is only one reference to a specific provision. (Section 414, which really was not part of the contest.) As a result, Resolution 05-43 fails to comply with the minimum standards of the MPC.

## CONCLUSION

Because the zoning hearing board made an error of law by considering a "methadone treatment facility" as a "clinic" under the terms of the previous ordinance, and erred by failing to include appropriate references to the ordinance and the MPC, Resolution 05-43 cannot be permitted to stand. However, since the zoning ordinance has been amended to specifically provide for "methadone treatment facilities," this petition must be remanded for further proceedings.

## ORDER

And now, January 31, 2007, for the reasons set forth in the preceding opinion, Fayette County ZHB Resolution 05-43 is hereby vacated, and remanded to the zoning hearing board for a further hearing in accordance with the following requirements:

(1) It shall be the burden of the petitioners to establish that the notice and 500-foot buffer requirements of Act 10 of 1999, 53 P.S. §10621, are met; and if they are not, the hearing is to be suspended in accordance with said Act until the commissioners of Fayette County (the "governing authority") hold the hearing required by that statute.

(2) It shall be the burden of the petitioners to establish that the notice and 1,000-foot and 300-foot buffer requirements of the current Fayette County Zoning Ordi-

nance, section 1000-846, effective November 1, 2006, are met, and if the buffer requirements are not met, to determine whether a waiver of those buffer requirements is appropriate.

(3) All other provisions of the current zoning ordinance are be applied to the hearing and decision, and any resolution is to contain appropriate references to the ordinance or other governing law.

(4) The zoning hearing board is specifically to consider whether or not the use of the facility by 250 patients per day between 5:30 a.m. and 11 a.m. on a four-lane highway without a center turn lane is consistent with the health, safety and welfare of the general public, and whether or not it adversely impacts the carrying capacity of State Route 51 at such times. Either a traffic study or approval of PennDOT representatives would appear to be appropriate as conditions of any approval, whether or not in conjunction with a revision to the driveway permit of the facility.

(5) In the event that the special exception is granted, specific conditions are to be imposed to secure the objectives of the zoning ordinance as well as the specific provisions thereof.

(6) In the event that the special exception is granted, the resolution should set forth that the specific conditions thereof may be modified by the zoning hearing board at any time in order to insure that the conditions are effective to secure compliance with the provisions of the zoning ordinance and other governing law. (The power to impose conditions carries with it the power to modify those conditions when justified. *Bonner v. Upper Makefield Township,* 142 Pa. Commw. 205, 213, 597 A.2d 196, 200 (1991).)