**ACTION AUDIO SERVICE, INC., Appellant,**

v.

**The ZONING HEARING BOARD OF UPPER DARBY TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Submitted July 11, 1997.

Decided Sept. 2, 1997.

---

Thomas F. Sacchetta, Media, for appellant.

James P. Bradley, Media, for appellee.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Action Audio Service, Inc. (Applicant) appeals from an order of the Court of Common Pleas of Delaware County (trial court) affirming the decision of the Zoning Hearing Board of Upper Darby (ZHB) to deny Applicant's application for a permit to allow continued use of a portion of Applicant's non-conforming property for storage, warehouse and/or office use.

The property in question was initially zoned B–Business when Applicant purchased it in 1972; however, in 1986, the Township of Upper Darby (Township) adopted a new zoning ordinance, under which the property was reclassified R–2 Residential. Thus, the property, which was used for various commercial uses, became non-conforming, but was entitled to pre-existing, non-conforming use status under section 1202 of the Township zoning ordinance.

The property, a single structure, is divided into three sections, Units A, B, and C, sharing a single address. Since 1972, Applicant has continuously used Unit A for commercial use and leased Units B and C for office and storage space to various other businesses, including a glass company, an aluminum company, a cabinet shop and a plumbing service; the last tenant to occupy Unit C was a sporting goods store, which left in March 1991. Although Applicant eventually found prospective tenants for Unit C, each was denied occupation and use permits because the Township believed that the non-conform-

ing use had been abandoned on March 31, 1992, a year after the sporting goods store moved out.[1] After the fourth prospective tenant was denied the necessary permits, Applicant applied for a permit to continue the non-conforming use. The Bureau of Licenses and Inspections denied Applicant's request and Applicant appealed to the ZHB, which held a hearing on the issue. At the hearing, Applicant argued that the property's non-conforming use as a commercial location had not, in fact, been abandoned, and presented witnesses in support of this position.

First, Gordon Bilides, a stockholder in Applicant, testified regarding the history of the property and the difficulty Applicant has had in finding a tenant since 1991. Bilides described the building's configuration as a single building divided into three sections, each with its own exterior entrance, but connected to the other sections by fire doors; he stated that, since acquiring the building in 1972 Applicant has not expanded, altered or destroyed any part of the building. According to Bilides, after Unit C was vacated, Applicant began to use that portion of the property, in addition to Unit A, for its television repair business. (R.R. at 20a—46a.)

Applicant next presented the testimony of Steven Bonatsos, president of Applicant, who testified that Applicant occupied Unit C while attempting to secure a new tenant. (R.R. at 47a—68a.) Applicant also presented the testimony of various neighbors and contractors who testified that they had observed large screen televisions being stored and repaired in Unit C since 1991. (R.R. at 68a—89a.)

In opposition, several protestants testified against Applicant's request and stated that they had not observed any commercial activity in Unit C, including television repair and storage, since 1991. (R.R. at 110a—138a.)

Based upon the foregoing testimony, the ZHB affirmed the denial of Applicant's requested permit. Applicant appealed to the trial court, which took additional evidence in the form of receipts for television repairs performed after 1991. The trial court found that the receipts did not prove that the repairs had been done in Unit C, rather than Unit A, and credited protestants' testimony that Unit C had not been used for commercial purposes since the sporting goods store left, implicitly discrediting the testimony of Applicant's witnesses, who claimed that Applicant had used Unit C during that time. Accordingly, the trial court concluded that Unit C's non-conforming use had been abandoned as of March 31, 1992, and affirmed the ZHB.

■ On appeal to this court,[2] Applicant argues that the trial court erred when it found that the non-conforming use had been abandoned. We agree.

■ A non-conforming use is an activity or structure which predates the otherwise relevant zoning restrictions. *Barbagallo v. Zoning Hearing Board of Ingram Borough,* 133 Pa.Cmwlth. 38, 574 A.2d 1171 (1990). A property owner has a right to continue the non-conforming use unless a municipality proves that such use has been abandoned. *Tantlinger v. Zoning Hearing Board of South Union Township,* 103 Pa.Cmwlth. 73, 519 A.2d 1071 (1987). The burden of proving that a non-conforming use has been abandoned is on those who assert the abandonment. *Tscheschlog v. Board of Supervisors of Tinicum Township,* 88 Pa.Cmwlth. 256, 489 A.2d 958 (1985). This burden consists of proving: (1) a period of discontinuance; and (2) an intent to abandon the non-conforming use. *Rubin v. Zoning Hearing Board of Millcreek Township,* 135 Pa.Cmwlth. 90, 578

1.  Section 1202 C of the Township Zoning Code (Code) provides:
    [s]hould a non-conforming use cease operation for a period of twelve (12) consecutive months, said use shall be considered abandoned and all rights arising from non-conforming status shall be considered voided.

2.  Our scope of review in a zoning case where the trial court has taken additional evidence is limited to determining whether the trial court committed an error of law or abused its discretion. *Tobin v. Radnor Township Board of Commissioners,* 142 Pa.Cmwlth. 567, 597 A.2d 1258 (1991).

A.2d 1372 (1990). Where, as here, an ordinance placing a time limit on abandonment is involved, the expiration of that period creates a presumption of intent to abandon the non-conforming use; however, the party asserting abandonment must still demonstrate concurrent overt acts or failures to act which show abandonment. *Id.*

■ In arguing that Unit C has lost its non-conforming use status through abandonment, the Township urges us to conclude that a portion of a single, non-conforming commercial building can lose non-conforming use status even when the rest of the building retains such status because commercial activity continues in the rest of the building. There are zoning ordinances which would dictate such a result. For example, in *Metzger v. Bensalem Township Zoning Hearing Board,* 165 Pa.Cmwlth. 351, 645 A.2d 369 (1994), the zoning ordinance considered in that case specifically referred to abandonment of "a non-conforming use of a building *or a portion thereof."* *Id.* 645 A.2d at 370 (emphasis added). Here, however, the Township zoning ordinance refers only generally to abandonment of non-conforming uses.[3]

The record reveals that Units A, B and C are not separate locations, but rather, merely sections of a single structure. Even assuming, *arguendo,* that substantial evidence in the record supports the trial court's finding that the portion of the building designated as Unit C has not been used for commercial purposes since 1991, there is unrebutted testimony that the building as an entirety has been used continuously for commercial activity since 1972. In an attempt to meet its burden of proof, the Township proved at best only that a portion of Applicant's building was not used for a period of time after a tenant vacated the space. The Township provided no evidence to prove that Applicant had abandoned the non-conforming use.

3. Section 1202 C of the Township zoning ordinance provides:

   Should a nonconforming use cease operation for a period of twelve (12) consecutive months,

Where, as here, the ordinance does not specifically provide that non-conforming use status may be abandoned in portions of a building and retained in the rest of the building, we decline to conclude that Unit C lost non-conforming use status while Units A and B retained such status.

Accordingly, we reverse.

### ORDER

AND NOW, this *2nd* day of *September,* 1997, the order of the Court of Common Pleas of Delaware County, dated November 18, 1996, is hereby reversed.

SILVESTRI, Senior Judge, dissents.

said use shall be considered abandoned and all rights arising from the nonconforming status shall be considered voided.