# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Sowich and Nancy Sowich   :
  :
v.   :
  :
The Zoning Hearing Board of Brown   :
Township, and Edgewood Estates,   :
Inc.   :
  :
v.   :
  :
Zoning Hearing Board of Brown   :
Township   :
  :
v.   :   No. 679 C.D. 2018
  :
Brown Township   :
  :
Appeal of: Edgewood Estates, Inc.   :


William and Nancy Sowich   :
  :
v.   :
  :
Zoning Hearing Board of Brown   :
Township   :
  :
Edgewood Estates, Inc.   :
  :
v.   :
  :
Zoning Hearing Board of Brown   :
Township   :
  :
v.   :   No. 721 C.D. 2018
  :   Argued: April 11, 2019
Brown Township   :

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: July 29, 2019

Edgewood Estates, Inc. (Landowner) and William Sowich and Nancy Sowich (Objectors) have cross-appealed an order of the Court of Common Pleas of Mifflin County (trial court) that affirmed a decision of the Zoning Hearing Board of Brown Township (Zoning Board).  Objectors contend that the Zoning Board erred in holding that Landowner's use of the property for depositing, storing, and removing fill was a lawful nonconforming use that pre-dated restrictions in the Brown Township Zoning Ordinance (Zoning Ordinance).[1]  Landowner contends that the Zoning Board erred in holding that Landowner's use of the property for grinding stone and storing concrete barriers did not constitute preexisting nonconforming uses.  For the reasons that follow, we affirm in part, reverse in part and vacate in part, which requires a remand of the matter.

## Background

Since 2006, Landowner has owned a 23-acre property in Brown Township (Township).  The Township's 1979 Zoning Ordinance placed the northwestern part of Landowner's property in the R-1 (Rural Residential) Zoning District and the southeastern part of the property in the C (Commercial) Zoning District.[2]  In February of 2011, the Township amended the Zoning Ordinance,

---

[1] BROWN TOWNSHIP ZONING ORDINANCE (2011).

[2] The record is unclear about the exact acreage of the residentially and commercially zoned areas under the 1979 Zoning Ordinance.  The Zoning Board solicitor stated, "I don't think we know…. I don't think anybody has gone out and surveyed it to take it in line with the zoning ordinance[.]" Notes of Testimony (N.T.), 11/23/2015, at 111; Reproduced Record at 250a (R.R.__).  In support

placing the entire property in the R-1 Zoning District, with the exception of a 500-foot-wide strip abutting Route 322, which is zoned Commercial.

On September 28, 2015, the Township's zoning officer issued a notice of violation to Landowner for the following activities:

1.   Grinding [s]tone to make small stones from large stones;

2.   Storing [c]oncrete [b]arriers (numerous)[;]

3.   Moving fill to site and removing fill from the site[;]

4.   Storing of [e]quipment and repetitive truck and heavy equipment activity related to Nos. 1-3 above;

5.   Utilizing the [s]ite for [m]anufacturing activities and for commercial purposes and activity[;]

6.   Otherwise establishing a new use and/or altering the existing use of the property.

Reproduced Record at 3a (R.R.__).  The notice charged a violation of Section 502(1) of the Zoning Ordinance, which limits the "permitted by right" uses in the R-1 District to the following:

- Agriculture

- Cemetery

- Emergency Services

- Forestry

of its land use appeal, Landowner submitted a sketch indicating the location of the property under the former Zoning Ordinance.  R.R. 327a.  The "upper part" of the property was zoned R-1 Rural Residential, and the "lower portion" was zoned Commercial.  N.T., 11/23/2015, at 95; R.R. 234a.  The sketch was admitted without objection.  *Id.* at 21; R.R. 160a.  The Zoning Board solicitor stated that he is "good with" "the demarkation of the commercial zone versus the residential zone on that map."  *Id.*

2

- House of Worship

- Municipal Building, Park or Playground

- Single Family Detached Dwelling

- Vacation Home

ZONING ORDINANCE §502(1). The notice also cited Landowner for a violation of Section 1802(1)(A) of the Zoning Ordinance, which requires a zoning permit before introducing a "new use on a tract of land" or changing "any existing use to another use." R.R. 3a.

Landowner appealed to the Zoning Board, asserting that its activities were lawful nonconforming uses that predated the 2011 amendment to the Zoning Ordinance.[3] Objectors, owners of an adjacent property, filed a petition to intervene, and on November 23, 2015, the Zoning Board held a hearing.

Michael Watson, president and owner of Landowner, testified that his company acquired the property from Trumbull Corporation on April 7, 2006. When Trumbull built a section of Route 322 in early 2000, it dumped the construction debris on the property. When Landowner took possession of the property, there was a 40-foot pile of fill consisting of "[c]oncrete, rock, topsoil, concrete pipe, broken concrete barriers, [and] concrete from highway." Notes of Testimony (N.T.), 11/23/2015, at 34; R.R. 173a. This 40-foot-tall pile sat on top of another pile of aggregate. Watson testified that Landowner used the property to "haul in fill, to take fill out, to store various construction material[s], as a stock

---

[3] Alternatively, Landowner requested a variance from the restrictions of the Zoning Ordinance and lodged a validity challenge to the Zoning Ordinance. The Zoning Board denied the variance request and did not rule on the validity challenge. The trial court affirmed the Zoning Board's denial of the variance and found the Zoning Ordinance valid. These are not issues before this Court.

3

yard." *Id.* at 52; R.R. 191a. According to Watson, other companies, including those "that were doing jobs for the [T]ownship," also used the property for this purpose. *Id.* at 53-54; R.R. 192a-93a.

Regarding the stone grinding for which Landowner was cited, Watson testified that Landowner has crushed stone on the property three times since 2006: in the spring of 2015, sometime in 2013, and "[o]ne other time before that." *Id.* at 60; R.R. 199a. The crushing was needed to "break the rocks down to smaller rocks" for different uses in Landowner's landscaping and construction business. *Id.* at 61; R.R. 200a.

Watson testified that there were five concrete barriers left on the property when it was acquired in 2006. In July of 2015, Landowner entered into a contract to store approximately 400 concrete barriers on the property.

Watson also testified that because of the large amount of aggregate, most of the property is not suitable for residential development. At most, only one acre is suitable for a residence or a church. The property cannot be used to grow crops because it is "basically all stone." *Id.* at 67; R.R. 206a. However, Watson believed the property could be used for "forestry" or for a "sawmill." *Id.* He explained:

> [Counsel:] In what manner?
>
> [Watson:] You could put the same thing, you could grind mulch there, you could haul mulch in everyday, you could haul logs in…. Because it does have a good base for that.
>
> [Counsel:] To do those kind of uses would [] require putting some kind of heavy machinery in there?
>
> [Watson:] Yes.
>
> [Counsel:] And require trucks coming in?

4

[Watson:] Yes.

*Id.* at 67-68; R.R. 206a-07a.

Landowner argued to the Zoning Board that the activities cited in the notice of violation were comparable to those conducted at a sawmill or a planing mill. Both these uses were permitted in the R-1 District prior to the 2011 amendment to the Zoning Ordinance.

## Zoning Board Decision

By decision of January 7, 2016, the Zoning Board concluded that Landowner's use of the property for depositing, storing, and removing fill was a lawful nonconforming use. By contrast, crushing stone and storing more than five concrete barriers on the property were not lawful nonconforming uses.[4]

The Zoning Board observed that using land for a fill operation was similar to "warehousing and storage," which was a permitted use in the Commercial or Industrial District. Board Decision, 1/7/2016, at 2-3; R.R. 74a-75a. The Zoning Board concluded that Landowner's fill operations constituted a lawful nonconforming use because it "had been ongoing more or less continuously since [Landowner] purchased the property in 2006." *Id.* The Zoning Board did not specify whether a fill operation was lawful in the R-1 District under the 1979 Zoning Ordinance or whether the pre-2011 fill operation took place on that part of the property located in the R-1 District.

With respect to the 400 concrete barriers stored on the property, the Zoning Board concluded that this use was "well outside the acceptable expansion"

---

[4] The Zoning Board also denied Landowner's appeal relating to its use of the property for storage of equipment and trailers. Board Order, 1/7/2016; R.R. 78a. The trial court affirmed the Zoning Board's decision. This is not an issue before this Court.

5

of a lawful nonconforming use of the property for storage of five barriers prior to 2015. *Id.* The Zoning Board also concluded that Landowner's grinding operation was no longer a lawful nonconforming use because it had been abandoned, noting that Watson testified that Landowner had ground stone three times since 2006.

## Trial Court's Remand for New Evidence

Landowner appealed to the trial court and argued, *inter alia*, that the Zoning Board erred in finding that grinding stone was a use different from depositing and removing fill. It also argued that its storage of concrete barriers constituted a lawful nonconforming use. Objectors cross-appealed, asserting that the Zoning Board erred in holding that Landowner's storage and removal of fill constituted a lawful nonconforming use. Objectors further asserted that because the Zoning Board failed to identify the nature and type of fill being stored on the property, "said fill should be limited to topsoil." Objectors' Land Use Appeal ¶8(b); R.R. 17a. The trial court consolidated the two appeals.

On January 24, 2017, Landowner filed a motion to present additional evidence, which stated in pertinent part:

> 5. In the [Zoning] Board's decision, the [Zoning] Board differentiated between the depositing[,] storage and removal of stone, which activities the [Zoning] Board found to be valid non-conforming uses on the subject property, versus the grinding and crushing of stone.
>
> * * *
>
> 7. [Objectors] take[] the position that the nature and type of fill that was deposited was not identified, and thus should be limited to top soil.
>
> * * *

10. [Landowner] desires to supplement the record in order to more fully describe the nature of its use of depositing, storing and removing fill, and the inherent nature of the need to at time[s] … grind and crush the stone fill as it is being removed.

11. [Landowner] desires to supplement the record to clarify that the main conforming use of the deposit, storage and removal of fill has at all times included stone and aggregate fill, and that grinding and crushing of those materials is an inherent part of the removal of the aggregate.

12. [Landowner] desires to supplement the record to explain that the non-conforming activities of depositing, storage and removal of fill, from the time [Landowner] purchased the property and before, involved primarily stone and aggregate fill as opposed to top soil.

13. [Landowner] desires to supplement the record to establish that the current [] Zoning Ordinance was passed well after [Landowner] purchased the property and well after the property was used for each and all of the non-conforming uses that [Landowner] has established and maintained or intended to maintain on the property from times before the passage of that Ordinance.

R.R. 66a-68a. Landowner requested the trial court to schedule a hearing to supplement the record.

The trial court granted Landowner's motion and remanded the matter to the Zoning Board to take additional evidence. The order stated that the evidence "shall be limited to the points raised in [Landowner's] Motion filed January 24, 2017." Trial Court Order, 2/23/2017, at 2; R.R. 96a.

On May 30, 2017, the Zoning Board held the remand hearing. At the hearing, Watson testified that Landowner had deposited "large pieces of concrete," "broken-up concrete," "large rocks, small rocks, fill dirt, shelling material, topsoil, asphalt," and "construction materials [such as] pipe, catch basins" on the property.

7

N.T., 5/30/2017, at 11; R.R. 381a. These same materials had been stored on the property before Landowner took possession in 2006. Landowner sold these materials for the construction of houses, truck garages, roads, and log yards.

Watson explained the rocks cannot be used without grinding and crushing them. *Id.* at 26; R.R. 396a. Watson testified:

> [Counsel:] Have you done that periodically since you purchased the property?
>
>             * * *
>
> [Watson:] We have done that, like I said, I busted up stuff with my hammer on the hoe to get it smaller to get it out of there and we have crushed.
>
> [Counsel:] Have other people also crushed for you?
>
> [Watson:] Yes.
>
> [Counsel:] Or crushed there?
>
> [Watson:] Yes.

*Id.* at 22; R.R. 392a. Watson further explained the relationship between the fill and the rocks that were crushed periodically:

> [Counsel]: [Y]ou seem to distinguish between grinding of stone into small stone and fill. What is the difference [?]
>
> [Watson]: The fill we can use on the bottom, but we always need something to cover it, so you can grab on. The only reason I haven't grounded anything, is I still have some left from the last time I grinded there, so I don't need any at this point.

8

*Id.* at 40; R.R. 410a. Landowner submitted copies of invoices for grinding, crushing and hauling; two of them were related to the work performed in 2011 for the construction of Objectors' driveway and swimming pool.

Numerous witnesses testified about their business transactions with Landowner from 2006 through the present. The operations manager for Derry Township Sewer Authority testified that the authority had used a large quantity of the fill materials from the property for two road projects in 2007 and 2009. A manager at Jeff Tate Paving testified that his company used the property to deposit clean fill, stone, asphalt, concrete, sod, and topsoil from 2006 through 2016. The president of Wagner Tire testified that during 2008 and 2009, he hauled fill from Landowner to build a property. The owner of Fultz Construction Hauling testified that he had been to the property "many times" since Landowner acquired the property, and he saw trucks "bringing in or removing materials" and "the crusher out there operating" "a couple [of] times." N.T., 5/30/2017, at 75; R.R. 445a. The owner of a farm adjacent to Landowner's property testified that "trucks [have been] going in loaded and dumping" since Landowner acquired the property. *Id.* at 79; R.R. 449a. He also observed "a crusher sitting there" several times, with the first appearance taking place "[p]robably about 2010 or 2011, somewhere in there." *Id.* at 80; R.R. 450a. A landscaper testified that he purchased rocks and topsoil from Landowner and disposed "rough material[s]" on the property. *Id.* at 82; R.R. 452a. An employee of Metzler Forest Products testified that Trumbull "had a crusher in there" in the 1990s. *Id.* at 88; R.R. 458a. A former employee of Landowner, Matthew Fisher, testified that between 2007 and 2014, he "sorted rock out," "hauled material in, loaded the crusher, [and] piled the crushings up in piles." *Id.* at 98; R.R. 468a.

The Zoning Board did not issue a written decision with findings of fact on the additional evidence. Instead, it advised that "the record will be transmitted to the [trial court] for further proceedings."[5] *Id.* at 8; R.R. 378a.

**Trial Court Decision**

By order and opinion dated April 16, 2018, the trial court affirmed the Zoning Board's decision of January 7, 2016. The trial court stated that it found "the evidence overwhelming" that Landowner has used the property as a place to deposit, store and remove fill from 2006 through the present. Trial Court Opinion, 4/16/2018, at 4; R.R. 100a. These activities constituted preexisting nonconforming uses that were permitted under the 1979 Zoning Ordinance. However, the trial court affirmed the Zoning Board's decision that Landowner's use of the property for storing concrete barriers was not a lawful natural expansion of a lawful nonconforming use because it constituted "an 80-fold increase in storage," which was "a significant change." *Id.* at 7; R.R. 103a.

The trial court further concluded that Landowner's use of the property for grinding stone had been abandoned. Section 1805(5) of the Zoning Ordinance provides that where a nonconforming use has ceased for a period of two years, the property must thereafter be used in conformity with the Zoning Ordinance. ZONING ORDINANCE §1805(5). Likewise, Section 1805(8) provides that a nonconforming storage of junk shall not be continued when it ceases for 90 days. ZONING ORDINANCE §1805(8). Watson's testimony that Landowner had ground stone on the property three times since 2006 did not establish that "the grinding

---

[5] Counsel for the Zoning Board stated at oral argument before the trial court, held on February 23, 2018, that the Zoning Board "did not render any new decisions or any new findings" after the remand hearing but rather "left that up to the [trial court]." N.T., 2/23/2018, at 1; R.R. 522a. The trial court responded, "Okay. I have no problem with that. It's a de novo." *Id.*

10

had been an ongoing operation at any time in the past." Trial Court Opinion, 4/16/2018, at 8; R.R. 104a. Because it did not take evidence, the trial court held that its standard of review was limited to determining whether the Zoning Board abused its discretion or erred as a matter of law. *Id.* at 5 (quoting *In re Petition of Dolington Land Group*, 839 A.2d 1021 (Pa. 2003)); R.R. 101a.

Landowner appealed to this Court. Objectors cross-appealed.

## I. Landowner's Appeal

On appeal,[6] Landowner raises five issues for our consideration, which we combine into three for clarity. First, it argues that the trial court erred by not reviewing Landowner's appeal *de novo* when it accepted additional evidence. Second, it argues that the trial court erred in affirming the Zoning Board's determination that its grinding activity was not a lawful nonconforming use and had been abandoned. Finally, it argues that the trial court erred in affirming the Zoning Board's determination that the storage of 400 concrete barriers on the property was not a natural expansion of a preexisting nonconforming use.

---

[6] Where the trial court does not accept additional evidence, this Court determines on review whether the zoning board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

However, where the trial court accepts additional evidence, we must determine whether the trial court abused its discretion or committed an error of law. *Crystal Forest Associates, LP v. Buckingham Township Supervisors*, 872 A.2d 206, 212 n.11 (Pa. Cmwlth. 2005). In addition, where a trial court accepts additional evidence concerning only a single issue, the court is not required to hear the entire matter on its merits, and may consider only that specific issue *de novo*. *Cherry Valley Associates v. Stroud Township Board of Supervisors*, 554 A.2d 149, 151 (Pa. Cmwlth. 1989).

11

## A. Trial Court's Standard of Review

Landowner first argues that the trial court erred by applying a deferential standard of review, rather than a *de novo* standard. On remand, the Zoning Board took additional evidence, but it did not make findings of fact or conclusions of law.[7] Given these circumstances, the Municipalities Planning Code required the trial court to "make its own findings of fact based on the record below." Section 1005-A of the Municipalities Planning Code (MPC), 53 P.S. §11005-A.[8] Landowner explains that the Zoning Board, in actuality, "served in the capacity of a hearing officer" for the trial court. Landowner Brief at 19. Accordingly, the trial court "must be deemed to have taken additional evidence" and employ a *de novo* standard of review. *Id.*

Objectors and the Zoning Board counter that the trial court did not take any evidence. Rather, it was the Zoning Board that heard the supplemental evidence and decided not to "alter its decision." Objectors Brief at 8. Thus, the trial court correctly limited its review to a determination of whether the Zoning Board erred or abused its discretion.

We begin with a review of Section 1005-A of the MPC and our precedent thereunder. Section 1005-A states as follows:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may

---

[7] The propriety of the trial court's order remanding the matter to the Zoning Board for additional evidence is not an issue before this Court.

[8] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.1[9] shall not be remanded for further hearings before any body, agency or officer of the municipality. If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. *If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.*

53 P.S. §11005-A (emphasis added).  The question of when a trial court must make findings of fact on the basis of the zoning board record has been specifically addressed by this Court.

In *Koutrakos v. Zoning Hearing Board of Newtown Township, Delaware County*, 685 A.2d 639 (Pa. Cmwlth. 1996), a landowner appealed a zoning board's denial of a special exception and variance, which it did without issuing a written decision with findings of fact.  The trial court reversed on the basis of its own findings.  The township appealed, arguing that the trial court should have taken additional evidence or remanded the matter to the board for findings.  We rejected this argument.  We held that the trial court properly made its own findings "when faced with an absence of [the board's] findings" and, further, the trial court "was not required to take additional evidence" to undertake fact finding. *Koutrakos*, 685 A.2d at 641.  We construed Section 1005-A of the MPC as providing the following three propositions:

---

[9] Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L. 1329, 53 P.S. §10916.1.

13

*First, a trial court properly makes its own findings if a record being reviewed by the court does not include findings, which we have determined to be the case here.* Second, as is often noted in the case law, the court also acts appropriately in making its own findings if it takes additional evidence. Third, the court generally may be precluded from making its own findings if the record includes findings and the court does not take additional evidence.

*Id*. at 641-42 (emphasis added).

Here, the trial court remanded the matter to the Zoning Board to take evidence on the specific matters raised by Landowner in its motion for additional evidence. The Zoning Board did so and, then, forwarded the transcript and exhibits to the trial court "for further proceedings." N.T., 5/30/2017, at 8; R.R. 378a. As in *Koutrakos*, the Zoning Board did not make findings of fact with respect to the evidence presented at the remand hearing. Section 1005-A of the MPC directs that if "the record does not include findings of fact," the trial court "*shall* make its own findings of fact based on the record below as supplemented by the additional evidence, if any." 53 P.S. §11005-A (emphasis added).

We agree with Landowner that under Section 1005-A of the MPC, the trial court was required to make findings of fact on the additional evidence presented at the remand hearing. On the other hand, we reject Landowner's argument that the trial court was required to consider the entire matter *de novo*. The remand hearing related solely to the issue of whether crushing of stone was a preexisting nonconforming use, and this is the only issue subject to *de novo* review. *Cherry Valley Associates*, 554 A.2d at 151 (where trial court accepts additional evidence on a single issue, it need only consider the specific issue *de novo*).

14

## B. Grinding and Crushing of Stone

Landowner argues, next, that the trial court erred in affirming the Zoning Board's determination that its grinding and crushing of stone was not a lawful nonconforming use. The evidence demonstrated that crushing of stone "has gone hand in glove" with the use of depositing, storing and removing fill. Landowner Brief at 21. Landowner crushed stone to render the aggregate usable. Numerous witnesses testified at the remand hearing that Landowner had used crushers on the property over the years, as had the prior owner, Trumbull. Further, there was no evidence that Landowner ever intended to abandon its grinding operation. Landowner asserts that the Zoning Ordinance created a presumption of abandonment, but Landowner introduced contrary evidence.

Objectors respond that the invoices Landowner introduced at the remand hearing suggest that Landowner brought a crusher onto the property only after the 2011 amendment of the Zoning Ordinance. Thus, grinding and crushing stone did not constitute a lawful nonconforming use. In any event, the use was so sporadic that it was abandoned. The Zoning Board agrees that the evidence at the remand hearing did not "clearly support crushers being used by [Landowner] on the property prior to 2011." Board Brief at 3. Further, it was a separate entity, not Landowner, that operated crushing equipment on the property.

A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction. *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). The right to continue a lawful nonconforming use is afforded the constitutional protections of due process. *Smalley v. Zoning Hearing Board of Middletown Township*, 834 A.2d 535, 539 (Pa. 2003). As such, a property owner's right to continue a legal nonconforming

15

use is an interest that runs with the land, so long as the use is not abandoned. *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012). To prove abandonment, the challenging party must show that the zoning ordinance establishes the period of time for which non-use will result in abandonment and that the landowner intended to abandon the prior lawful use. *Action Audio Service, Inc. v. Zoning Hearing Board of Upper Darby Township*, 699 A.2d 1375, 1377 (Pa. Cmwlth. 1997).

Section 1805 of the Zoning Ordinance states, in pertinent part, as follows:

> (1) Continuation. Any lawful use of a structure or land or any lawful structure existing at the effective date of this article may be continued, although such use or structure does not conform to the provisions of this Ordinance.
>
> * * *
>
> (5) Abandonment.
>
>> A. If a non-conforming use of a structure or land ceases for a period of two (2) years or more, subsequent use of a structure or land shall be in conformity with the provisions of this Ordinance.
>
> * * *
>
> (8) Nonconforming use of open land. Regardless of anything in this Section 1805 to the contrary notwithstanding and regardless of the definition of "structure" as set forth in Article II, Section 202, or otherwise in this Ordinance, all nonconforming signs, billboards, junk storage areas and similar nonconforming use of land, when discontinued for a period of ninety (90) days or damaged to an extent of seventy-five (75%) or more of replacement costs, shall not be continued, repaired or constructed.

16

ZONING ORDINANCE §1805 (emphasis omitted). Thus, Section 1805 establishes that a two-year period of non-use can result in abandonment of a nonconforming use, unless the use of land is for junk storage, which is abandoned after 90 days of non-use.

This Court has "long held" that a time period such as that set forth in Section 1805 "serve[s] to create a presumption of a landowner's intent to abandon a nonconforming use if such use is not resumed prior to the expiration of the period set forth in the ordinance." *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township*, 686 A.2d 888, 890 (Pa. Cmwlth. 1996). However, it remains the burden of the party asserting abandonment to demonstrate "both that a landowner intended to abandon the use and that the use was actually abandoned." *Id.* "This burden does not switch to the landowner to disprove discontinuance even when a presumption is made." *Id.* (citing *Pappas v. Zoning Board of Adjustment of City of Philadelphia*, 589 A.2d 675 (Pa. 1991)). Further, non-use or limited use alone does not prove abandonment. *Latrobe Speedway*, 686 A.2d at 890. "Actual abandonment must be demonstrated by other evidence, such as overt acts, a failure to act, or statements." *Id.*

Here, the trial court held that Landowner's use of the property for grinding stone had been abandoned, relying solely on Watson's testimony that Landowner had ground stone on the property three times since its purchase of the property in 2006. Neither Objectors nor the Township offered any evidence of abandonment, such as overt acts by Landowner. The trial court erred in affirming the Zoning Board's determination that Landowner had abandoned its grinding use.

Nevertheless, it was Landowner's burden to prove that its grinding operation constituted a lawful, nonconforming use. The ability to maintain a

17

nonconforming use is "only available for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Hafner*, 974 A.2d at 1210-11. "Preexisting illegal uses cannot become nonconforming uses, and it is the burden of the party proposing the existence of such a use to establish *both its existence and legality before the enactment of the ordinance at issue*." *Id.* at 1211 (emphasis added). Further, "[t]he manner of use and the dates of its existence are questions of fact on which a reviewing court defers to the fact-finder; however, the legality of a use is a question of law over which our review is plenary." *Id.* In short, Landowner had to establish that its grinding operation existed and was lawful before the 2011 amendment to the Zoning Ordinance.

At the November 23, 2015, hearing, Watson testified that Landowner ground stone on the property in the spring of 2015, sometime in 2013, and "one other time before that." N.T., 11/23/2015, at 60; R.R. 199a. The Zoning Board stated that Watson's testimony did not prove that the grinding operation was "ongoing [at] any time in the past." Board Decision, 1/7/2016, at 3; R.R. 75a. At the remand hearing, Landowner presented evidence that the earliest use of crushing equipment on the property dated to the 1990s when Trumbull occupied the premises. However, the Zoning Board did not make findings of fact on this or any of the evidence presented at the remand hearing. Because "the record does not include findings of fact" as to whether the grinding use predated the 2011 amendment to the Zoning Ordinance, we must remand to the trial court to make "its own findings of fact based on the record below as supplemented by the additional evidence." Section 1005-A of the MPC, 53 P.S. §11005-A.

Landowner also had to establish that its grinding operation was lawful under the 1979 Zoning Ordinance. Before 2011, the northwestern part of the

18

property was in the R-1 District, and the southeastern part of the property was located in the C (Commercial) District. The 1979 Zoning Ordinance did not list grinding or crushing of stone as a permitted use in either the R-1 District or the C District. It did permit, among other uses, "sawmill [and] planing mill" in the R-1 District and any other "service or use" "substantially similar to" those described therein. FORMER ZONING ORDINANCE §502.A(2), 502.A(11).

At the November 23, 2015, hearing, Watson testified that the activities conducted on the property were similar to "forestry" or a "sawmill," where "[y]ou could put the same thing, you could grind mulch there, you could haul mulch in everyday, [and] you could haul logs in." N.T., 11/23/2015, at 67-68; R.R. 206a-07a. Watson testified the same kind of "heavy machinery" and trucks would be required at a sawmill. N.T. 68; R.R. 207a. The Zoning Board did not make any findings as to whether Landowner's activities were substantially similar to a sawmill, noting only that "the exact categorization of the various uses on the property is difficult." Board Decision, 1/7/2016, at 2. At the remand hearing, Watson offered more testimony on how the grinding related to Landowner's fill operation, but the Zoning Board made no findings on this additional evidence. Likewise, the trial court did not address whether the grinding operation was lawful under the former Zoning Ordinance.

Although the legality of a use is a question of law over which our review is plenary, "the manner of use" is a question of fact on which a reviewing court must defer to the fact-finder. *Hafner*, 974 A.2d at 1211. Here, there are no findings about whether Landowner's grinding activity was substantially similar to those conducted at a sawmill or a planing mill, a permitted use in an R-1 District under the former Zoning Ordinance. Accordingly, we remand to the trial court to

19

make "its own findings of fact" based on the existing record. Section 1005-A of the MPC, 53 P.S. §11005-A.

In sum, because Objectors and Township did not present evidence of abandonment, the trial court erred in holding that Landowner had abandoned its grinding use. Because the trial court did not make any findings of fact about whether the grinding use existed before 2011 and whether it was substantially similar to a sawmill and planing mill, uses allowed in the R-1 District under the former Zoning Ordinance, we must remand to the trial court to making necessary findings based on the existing record. 53 P.S. §11005-A.

## C. Storage of Concrete Barriers

Finally, Landowner argues that the trial court erred in holding that the storage of 400 concrete barriers on the property was not a natural expansion of a preexisting nonconforming use. Importantly, there was no evidence presented that storing 400 concrete barriers on a 23-acre property is detrimental to public health, welfare and safety. Objectors respond that although the evidence suggested that Landowner had stored "some concrete barriers" on the property after 2006, it subsequently removed them, leaving only five barriers on the premises. They contend that the increase to 400 barriers does not constitute a natural expansion.

The doctrine of natural expansion gives a landowner the right to expand "as required to maintain economic viability or to take advantage of increases in trade" so long as the expansion is not detrimental to the public welfare, safety and health. *Smalley*, 834 A.2d at 543-44 (citations omitted). The doctrine does not require the proposed use be identical to the nonconforming use. Rather, the proposed use must be sufficiently similar so as not to constitute a new or different use. *Limley v. Zoning Hearing Board of Port Vue Borough*, 625 A.2d 54,

20

55 (Pa. 1993) (proposed public restaurant and bar similar to existing use as private social club); *Pappas*, 589 A.2d 675 (pizza restaurant with seating for 40 customers similar to existing use as sandwich shop with limited customer seating that sold primarily take-out food); *Appeal of Indianhead, Inc.*, 198 A.2d 522 (Pa. 1964) (proposed day camp and swim club similar to existing use as amusement park); *Mutimer Co. v. Wagner*, 103 A.2d 417 (Pa. 1954) (proposed machinery sales office similar to existing use as real estate sales office). A nonconforming use cannot be limited to the precise magnitude which existed on the date when the zoning ordinance was adopted. *Limley*, 625 A.2d at 56. "The fact that an expansion is sizeable does not make it unreasonable *per se*." *Domeisen v. Zoning Hearing Board of O'Hara Township*, 814 A.2d 851, 856 (Pa. Cmwlth. 2003).

Here, the Zoning Board found that Landowner stored "a small number of concrete barriers (5 or less)" before the 2011 Zoning Ordinance amendment. Board Decision, 1/7/2016, at 3. The Zoning Board also concluded that "warehousing and storage" were allowed in the C (Commercial) District. *Id.* However, the Zoning Board found that the "80-fold increase in barrier storage that began in July, 2015, is well outside the acceptable expansion outlined in §1805 [of the Zoning Ordinance]," opining that Landowner was limited to storing an "acceptable" number of five or fewer barriers. *Id.* This was error.

Section 1805 of the Zoning Ordinance provides, in pertinent part, as follows:

> 2. Extension. A nonconforming use or a nonconforming structure may be expanded to a distance of no greater than one hundred fifty (150) feet in any direction from the existing nonconforming use or nonconforming structure or to an area equal to no more than twenty-five percent (25%) of an existing nonconforming use or nonconforming structure, whichever is

21

the lesser. Nonconforming uses or nonconforming structures created by variance shall not be permitted to expand.

ZONING ORDINANCE §1805(2). Under Section 1805(2) Landowner could not store concrete barriers more than 150 feet beyond the area where they were previously stored, and it could not increase the area used to store concrete barriers by more than 25%.

Landowner notes that the 40-foot-high pile of "fill" included, *inter alia*, concrete barriers and, further, the 400 barriers are located in the same place as the "fill." Landowner Brief at 32. The Zoning Board did not find that the increase in number of barriers from five to 400 involved an expansion of land area, as was necessary under Section 1805(2) of the Zoning Ordinance. The Zoning Board erred in holding that the increase in number of concrete barriers violated Section 1805(2) of the Zoning Ordinance.

## II. Objectors' Cross-Appeal

In their cross-appeal, Objectors argue that the Zoning Board erred in holding that Landowner's use of the property for depositing, storing, and removing fill constituted a lawful nonconforming use. Objectors contend that this use was not allowed in the R-1 District under the 1979 Zoning Ordinance. Objectors Brief at 15.

Objectors do not challenge the Zoning Board's holding that warehousing and storage were allowed in the Commercial District. Uses permitted in the Commercial District prior to the 2011 amendment included "storage building, warehouse or storage yard for one of the principal uses described in Section 802.B," which in turn allowed, among others, "a carpenter's shop; cabinetmaker's shop; upholsterer's shop; machine shop; metal-working shop; plumber's shop; electrician's shop; [and] printer's shop," and any other "service or

22

use" "substantially similar to" those described therein. FORMER ZONING ORDINANCE §§802.A(13), 802.B(14)-(15). Based on the record, primarily Watson's testimony, the Zoning Board concluded that Landowner's placement, storage, and removal of fill on the property were all lawful activities under the former Zoning Ordinance.

Objectors contend that the Zoning Board erred because fill operations were not allowed in the R-1 District under the former Zoning Ordinance. Objectors Brief at 15. To the extent that Objectors are challenging the Zoning Board's finding that the southeastern part of the property was zoned Commercial under the former Zoning Ordinance, they provide only a vague and conclusory argument to that effect. More to the point, Objectors did not present evidence to demonstrate that Landowner's pre-2011 fill operation took place on that part of its property located in the R-1 District. Further, Objectors did not explain why the fill operation was not allowed in the R-1 District prior to 2011 under the 1979 Zoning Ordinance.[10] Simply, Objectors did not make their case.

The Zoning Board's interpretation of its own zoning ordinance is entitled to great deference and weight. *Hafner*, 974 A.2d at 1210. Further, as the trial court concluded, Landowner presented substantial evidence that it has used the property to deposit, store, and remove fill since 2006 through the present, as did its predecessor. We conclude that the Zoning Board did not err in determining that Landowner's use of the property for depositing, storing, and removing fill constituted a lawful nonconforming use.

---

[10] Under the 1979 Zoning Ordinance a wide variety of uses were permitted in the R-1 District, including "farm service echelon establishment for … [a] sawmill," a "landfill site" or any other "substantially similar [activity]." FORMER ZONING ORDINANCE §502.A(2), (11) and (14).

**Conclusion**

We hold that the trial court erred in affirming the Zoning Board's determination that Landowner had abandoned the grinding use because there was no evidence that Landowner intended to abandon this use and actually abandoned it. Because the trial court did not make any findings of fact as to whether Landowner's grinding operations existed before 2011 and whether this activity was substantially similar to a sawmill and planing mill, as allowed under the 1979 Zoning Ordinance, we remand the matter to the trial court to make these findings of fact based on the existing record as supplemented by the additional evidence presented at the May 30, 2017, remand hearing. We further hold that the trial court erred in holding that Landowner's storage of 400 concrete barriers was not authorized by the natural expansion doctrine. There was no finding that the increase in number of barriers from five to 400 involved an area of land beyond the limits set forth in Section 1805(2) of the Zoning Ordinance. ZONING ORDINANCE §1805(2).

As to Objectors' cross-appeal, we affirm the trial court's decision that Landowner's use of the property for depositing, storing, and removing fill constituted a lawful nonconforming use. The Zoning Board did not err or abuse its discretion in reaching this conclusion.

_____
MARY HANNAH LEAVITT, President Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Sowich and Nancy Sowich | : | |
| | : | |
| v. | : | |
| | : | |
| The Zoning Hearing Board of Brown Township, and Edgewood Estates, Inc. | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of Brown Township | : | |
| | : | |
| v. | : | No. 679 C.D. 2018 |
| | : | |
| Brown Township | : | |
| | : | |
| Appeal of: Edgewood Estates, Inc. | : | |
| | | |
| William and Nancy Sowich | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of Brown Township | : | |
| | : | |
| Edgewood Estates, Inc. | : | |
| | : | |
| v. | : | |
| | : | |
| Zoning Hearing Board of Brown Township | : | |
| | : | |
| v. | : | No. 721 C.D. 2018 |
| | : | |
| Brown Township | : | |

# **O R D E R**

AND NOW, this 29th day of July, 2019, the order of the Court of Common Pleas of Mifflin County, dated April 16, 2018, in the above-captioned matter is AFFIRMED in part, REVERSED in part, and VACATED in part, and this matter is REMANDED to the Court of Common Pleas of Mifflin County to make findings of fact based on the existing record as supplemented by the additional evidence presented at the May 30, 2017, remand hearing.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge